DOUGLAS v. BERGLAND.

1. RIPARIAN RIGHTS—RIGHT TO USE OF SUBAQUEOUS LAND—PUBLIC RIGHTS—NAVIGABLE LAKES.

A riparian owner is entitled to the beneficial use of the subaqueous land adjoining his premises so long as he does not interfere with the public rights in a navigable lake.

2. SAME—RIGHT TO FISH IN NAVIGABLE LAKE—NO RIGHT TO TRESPASS.

The right to fish in the waters of a navigable lake does not carry with it the right to trespass upon the fast land of a riparian owner or to appropriate his property in the exercise of such right.

3. NEGLIGENCE—INVITEE—LICENSEE—EVIDENCE.

In an action for personal injuries received while plaintiff was fishing from defendant's rollways in the waters of a navigable lake, testimony that plaintiff and his wife were in the habit of fishing from said rollways, and that on one occasion defendant pointed out to plaintiff's wife where he thought she could catch a fish, *held*, insufficient to establish that plaintiff was an invitee, and established, at most, that he was a licensee.

On rights of boating and fishing on inland lakes, see note in 5 A. L. R. 1056.

4. SAME—WAY OR PATH—DUTY TO LICENSEE—LICENSEE ASSUMES
   RISK.

   Where the license is to use a way or path which has
   been openly and notoriously held out to the public for
   use, the applicable rule as to the duty of the licensor to
   the licensee is different from where the license is to go
   upon premises generally.

5. SAME—LICENSEE ASSUMES RISK.

   Where plaintiff had been in the habit of going upon de-
   fendant's rollway, as a licensee, for the purpose of fish-
   ing in a navigable lake, and in the course of defendant's
   business the condition of the rollway was changed from
   one of safety to one of danger, so that plaintiff, who
   was unaware of the change, was seriously injured, there
   was no duty upon defendant to notify plaintiff of the
   change, as he went upon defendant's premises at his
   own risk.

Error to Ontonagon; Driscoll (George O.), J. Sub-
mitted October 7, 1921. (Docket No. 54.) Decided
December 21, 1921.

Case by Benjamin F. Douglas against Gunlek A.
Bergland for personal injuries. Judgment for plain-
tiff. Defendant brings error. Reversed, and no new
trial ordered.

*Van Slyck & Walsh,* for appellant.

*James A. O'Neill,* for appellee.

Defendant owns and operates a sawmill at Berg-
land, on the shore of Lake Gogebic. The lake is
navigable and of considerable proportions, being 17
miles in length and 3 miles in width at certain places.
The village of Bergland has a population of about
400. It is sustained by defendant's mill, most of the
inhabitants being his employees and their families.
It is located on the Duluth, South Shore & Atlantic
railroad. A spur track has been built out into the
lake several hundred feet. In the winter months de-

fendant gets in his supply of logs for the summer operations. They come in on the railroad and the cars are run out on the spur track running into the lake, and the logs are unloaded and put in rollways on the ice. As the weight of the rollways increases with the addition of logs the ice breaks and the rollways settle in the water and rest on the bottom, the water being from 6 to 8 feet deep at this place. After the ice has gone out in the spring and during the summer months the rollways are broken up and the logs taken to the mill to be manufactured into lumber. In breaking up the rollways it was customary to pick out the keylogs, and the wind and waves would then more readily cause the breaking up of the rollways. To prevent the logs floating away on the lake a boom was constructed.

For 9 seasons prior to that of 1915 plaintiff spent the summer months at Bergland. While there he indulged in fishing, sometimes from a boat and sometimes from the rollways of defendant. Others, mostly defendant's employees, also fished from these rollways. Plaintiff came to Bergland for the season of 1915. On June 28th, after supper, he went to the rollways to fish. He stepped on a log and finding it insecure stepped on another rollway, and remained there a short time when it likewise gave way, resulting in serious injuries to him. He recovered a judgment in the court below which is here reviewed by defendant.

FELLOWS, J. (*after stating the facts*). There can be no serious question as to defendant's right as riparian owner to the beneficial use of the subaqueous land adjoining his premises so long as he does not interfere with the public rights in this navigable lake. *Rice* v. *Ruddiman*, 10 Mich. 125. We do not understand plaintiff's counsel to controvert this proposition.

He bases plaintiff's right to recover here upon his right to fish in the navigable waters of the State, upon his rights as an invitee, and upon his rights as a licensee and discusses these rights at length. We shall take them up in their order.

1. Lake Gogebic is a navigable lake; it has been stocked with fish which are there found in abundance. There can be no question of plaintiff's right to fish in its waters. But that is not the precise question here involved. Plaintiff is not a riparian owner on this lake so far as this record discloses. In order to exercise his right to fish he must pass over the premises of a riparian owner, either those of defendant, the railroad company, or some one else. The question here is: Was plaintiff a trespasser in going across and upon premises of defendant for the purpose of exercising the right of fishing? Plaintiff's counsel insists that this question must be answered in the negative on the authority of *Marsh* v. *Colby*, 39 Mich. 626. There is language used in that opinion which gives color to counsel's contention. This has prompted us to examine the record and briefs in that case to see if the question of trespass to the fast land of plaintiff was there involved. We find it was not. The testimony only showed that defendant went over plaintiff's subaqueous land in a boat and plaintiff's counsel in that case conceded that defendant entered the lake from the land of one Arnold, another riparian owner; so that the question of trespass to fast land was not involved. In *Beach* v. *Hayner*, 207 Mich. 93, we expressly recognized the right to fish in the navigable waters of the State when lawfully upon them. And in *Giddings* v. *Rogalewski*, 192 Mich. 319, we held (quoting from the syllabus) :

"The right of the State, under its police power, to enforce the fish and game laws upon the lands of a

private owner does not take away the owner's right to maintain trespass against those who invade his close without permission for the purpose of fishing.

"Every unauthorized intrusion upon private lands is a trespass for which the owner has a right of action, and is entitled to at least nominal damages."

Plaintiff being lawfully on the lake no doubt would have the right to row his boat over the subaqueous lands of defendant and fish there, but he would not have the right to appropriate defendant's boat for that purpose if he found it tied to defendant's dock, nor could he without license from defendant use his dock or rollways of logs for that purpose. Plaintiff's right to fish in the water of Lake Gogebic did not carry with it the right to trespass upon the fast land of defendant or to appropriate his property in the exercise of such right.

2. Was plaintiff an invitee? The testimony shows that plaintiff, his wife and others, fished off these rollways. On one occasion defendant pointed out to plaintiff's wife where he thought she could catch a fish. We think this testimony established license at most and did not establish that plaintiff was an invitee. In *Benson* v. *Traction Co.*, 77 Md. 535 (26 Atl. 973, 20 L. R. A. 714), the principal of the training school, Mr. Saville, had written to the president of the defendant for permission to the graduating class to visit its power house. The permission was granted and some 30 or more of the scholars and teachers went to the power house and were shown through the plant. Part of the time they were accompanied by a guide, but in his temporary absence plaintiff fell into a vat of hot water used by defendant in its business and received serious injuries. It was insisted on behalf of plaintiff that under the circumstances he was an invitee and defendant's duty towards him was measured by the standard of such

relation. The court declined to accept this view, held that he was a licensee, and after reviewing the authorities said:

"And so in this case we are compelled to say, that there is nothing in the declaration supplemented with the request of Mr. Saville, and the assent of the appellee, to justify the conclusion that the appellant was in any manner invited or induced by any act of the appellee to visit its powerhouse, but he went there solely for his own personal benefit and pleasure, and he must accept the consequences, unfortunate though they be."

We are persuaded that at most plaintiff can claim no greater rights than those of a licensee.

3. This brings us to the crucial question in the case: Has the defendant been guilty of failure of any duty he owed plaintiff as licensee? The theory advanced by plaintiff's counsel to sustain this judgment is that if we assume plaintiff was a licensee, still defendant owed him the duty not to so change the character of the premises as to render them dangerous without notice to him and to the public generally, and that defendant's agents by undermining the rollway in the work of tearing it down and getting out the logs had changed its condition from a place of safety to one of danger, and for such action the defendant is liable, and counsel relies most strongly on *Morrison* v. *Carpenter*, 179 Mich. 207 (Ann. Cas. 1915D, 319), to sustain such contention. But that case involved a way, a path, and the text-writers and courts generally, including this court, have recognized that a different rule applies to the license to use a way or a path which has been openly and notoriously held out to the public for use from a license to go upon premises generally. In 29 Cyc. p. 449, it is said:

"The rule is well settled that an owner of premises

216—Mich.—25.

owes to a licensee no duty as to the condition of such premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or wantonly or wilfully cause him harm. The licensee enters upon the premises at his own risk and enjoys the license subject to its concomitant perils. There is a class of cases, however, which stand on a ground peculiar to themselves. They are where defendant by his conduct has induced the public to use a way in the belief that it is a street or public way which all have a right to use, and where they suppose they will be safe. The liability in such a case is coextensive with the implied invitation."

And in 20 R. C. L. p. 64, it is said:

"While an invitation to go upon premises will not be implied, ordinarily, from the fact that the owner or occupant has acquiesced in or tolerated trespass thereon, many decisions have recognized an exception in case of a way across lands or structures thereon. If the owner or occupant has permitted persons generally to use or establish a way under such circumstances as to induce a belief that it is public in character, he owes to persons availing themselves thereof the duty due to those who come upon premises by invitation."

Mr. Justice STONE, who wrote the opinion in the *Morrison Case,* very clearly laid down the rule where a way, a path, was involved, and by pointing out the distinction between the case then before us and *Habina* v. *Electric Co.,* 150 Mich. 41 (13 L. R. A. [N. S.] 1126), to which we shall presently refer, pointed out the distinction we must recognize between the *Morrison Case* and the one now before us. He said:

"In other words, if the licensee has been using a defined path for a length of time with the knowledge and permission of the licensor, then, if the licensor interferes with said path by making it more dangerous, he should give notice to the licensee, or guard the dangerous place so made. We think this doctrine is clearly recognized by this court in *Habina* v. *Elec-*

*tric Co.*, 150 Mich. 41, at page 49 (13 L. R. A. [N.
S.] 1126). In that case a child had been injured;
but, unlike this case, it did not appear that any path
or way was shown to have existed at or over the land
where the ditch in which the child was injured was
opened. In that case it was distinctly found that it
did not appear that the plaintiff ever traveled over the
premises in a path or way in a direction used by any
one else, or that she twice pursued the same way
herself, but that she and others had been in the habit
of roaming over the entire premises."

The early case of *Hargreaves* v. *Deacon*, 25 Mich.
1, has been frequently cited by this and other courts;
a child of tender years had fallen into a cistern on the
premises of defendant and been drowned. Mr. Justice
CAMPBELL, who wrote for the court, first pointed out
that no question of way existed and then proceeded to
determine the rights of plaintiff's decedent as a li-
censee. In the course of the opinion he said:

"But where injury arises to a person from the
neglect of one, in doing his lawful business in a law-
ful way, to provide against accident, the question
arises at once whether he was under any legal obliga-
tion to look out for the protection of that particular
person under those particular circumstances. For
the law does not require such vigilance in all cases,
or on behalf of all persons.  *  *  *

"Cases are quite numerous in which the same ques-
tions have arisen which arise in this case, and we
have found none which hold that an accident from
negligence, on private premises, can be made the
ground of damages, unless the party injured has been
induced to come by personal invitation, or by employ-
ment which brings him there, or by resorting there
as to a place of business, or of general resort held
out as open to customers or others whose lawful occa-
sions may lead them to visit there. We have found
no support for any rule which would protect those
who go where they are not invited, but merely with
express or tacit permission, from curiosity or motives

of private convenience, in no way connected with business or other relations with the occupant."

The authorities are reviewed at considerable length and the opinion concludes with the following:·

"We cannot help feeling much sympathy for the sad case of a child who was only following the natural and innocent curiosity of his age, when he met with the accident which caused his death. But there is nothing to indicate any wanton or inhuman disposition in the defendants, and no illegality in their management of their business, and they have violated no right of the plaintiff or his intestate."

*Habina* v. *Electric Co.*, *supra*, was not a case of a way. The premises had, however, been used sufficiently by the public to make plaintiff a licensee. In crossing them plaintiff fell into a ditch which contained hot water coming from defendant's plant, and was injured. There, as here, it was insisted that defendant had changed the conditions without notice to the public, but it was held that to entitle plaintiff to recover the change must be such as indicated a reckless and wanton disregard of the safety of plaintiff and others. There, as here, the change in conditions was the result of the necessities of the business and we denied liability. It was there said:

"But assuming, as the trial judge did, that she belonged to the class known to the law as naked licensees, 'about the least favored in the law of men who are not actual wrongdoers,' Pollock on Torts, pp. 424, 425, her position, assuming further that she exercised proper care, is not improved, unless it should be said that defendant's conduct in opening the ditch and leaving it unguarded at the point where plaintiff fell into it was such a change in the condition of the premises, such creating of a new danger by its active conduct, as indicated a reckless and wanton disregard of the safety of plaintiff and others. Here again we come to the proposition that if in the conduct of its business it became necessary to change the

condition of the surface of its premises, defendant could change them in no place, in the 45,000 square feet occupied, without giving notice of such change."

The instant case is not distinguishable upon principle from this case.

In the case of *Clark* v. *Railroad Co.*, 113 Mich. 24 (67 Am. St. Rep. 442), the plaintiff tripped on a wire used by defendant to operate its semaphore. In denying liability it was said by Mr. Justice HOOKER, speaking for the court:

"Whether these persons were trespassers or naked and gratuitous licensees (which last we do not mean to intimate) is unimportant. In neither case had they the right to expect the defendant to forego a reasonable use of its land, in which respect it stood on the same place as a private person."

In *Gramlich* v. *Wurst*, 86 Pa. St. 74, it was said:

"Gramlich was in the lawful occupancy of the lot on which Wurst was killed, and was engaged in an employment that was entirely legitimate. In the absence of evidence to show the existence of exceptional hazards, he was not required to provide exceptional safeguards. An owner of land may improve it in his own time and in his own way, so that he violates no duty that he owes to any adjacent owner or to the public. * * * The law fully recognizes the right of him who, having the dominion of the soil, without malice does a lawful act on his own premises, and leaves the consequences of an act thereby happening where they belong, upon him who has wandered out of his way, though he may have been guilty of no negligence in the ordinary acceptation of the term."

See, also, *Newell* v. *Railway Co.*, 187 Mich. 697 (on rehearing) ; *Sandstrom* v. *Railway Co.*, 198 Mich. 99; *Groesbeck* v. *Shelden*, 185 Mich. 583; *Ryan* v. *Towar*, 128 Mich. 463 (55 L. R. A. 310, 92 Am. St. Rep. 481) ; *Sturgis* v. *Railway Co.*, 72 Mich. 619; *Formall* v. *Standard Oil Co.*, 127 Mich. 496; *Downes* v. *Elmira Bridge*

*Co.*, 179 N. Y. 136 (71 N. E. 743) ; *O'Brien* v. *Railroad Co.,* 209 Mass. 449 (95 N. E. 861, 36 L. R., A. [N. S.] 492) ; *Parker* v. *Publishing Co.,* 69 Me. 173; *Vanderbeck* v. *Hendry*, 34 N. J. Law, 467.

While the declaration alleges that defendant improperly piled the rollways there is no proof to support this claim. The proof, and all of it, showed that the rollways were properly piled and that they were broken up in the usual, customary, and economical way. While plaintiff claims he did not know how they were broken up, for nine years he had seen—must have seen—as the seasons progressed, one after another of these rollways broken up and the logs floated to the mill. He was upon the premises where the accident occurred for his own convenience, had no business with the owner, he was at most a licensee. Defendant in the usual and customary manner used these premises in the conduct of his business. In the conduct of such business and to get logs for the mills he broke up these rollways which were but temporary, and this he did in the usual and customary manner. Defendant has breached no duty he owed the plaintiff and is not liable in this action.

The judgment will be reversed without a new trial.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.