CHADWICK *v.* OHIO COLLIERIES CO.

(Decided December 28, 1928.)

*Mr. L. A. Koons,* for plaintiff in error.
*Mr. A. B. Wells,* and *Messrs. Tracy, Chapman & Welles,* for defendant in error.

MAUCK, J. Fred A. Chadwick, plaintiff below, filed a third amended petition against the Collieries Company reciting that the company owned and controlled a mine and the grounds connected therewith; that in connection with its operation of the mine

it maintained a bathhouse on the premises; that the grounds upon which the mine and bathhouse were located were open and uninclosed, and the public was accustomed, with the concurrence and passive approval of the company, to enter upon the premises for the purpose of transacting business with the employees of the company and for convenient passage to and from their homes and places of business. He pleaded that there had long been a passageway for pedestrians from the public road to the bathhouse, and on in the general direction of plaintiff's residence. For the purpose of supplying the bathhouse with hot water, the company was maintaining a hot water pipe underground in the roadway leading to the bathhouse. Some time prior to January 22, 1922, this hot water pipe had become broken, and, as a result, the escaping hot water had formed a pool adjoining the pathway, and by January 26 the soil around that pool had become so disintegrated that the pool extended across the pathway, and persons using the pathway could only avoid the pool by deviating from the pathway that they had been accustomed to use. On the evening of January 26 the plaintiff called at the bathhouse, having business with an employee of the defendant, who, he expected, would be found at the bathhouse. He did not find the party for whom he was looking, and attempted to proceed to his home along the pathway already referred to, which he had been accustomed to use, and, having no knowledge of the pool that had encroached upon and destroyed the path, and being unable to see the same on account of the darkness, he stepped into the pool, and was severely scalded, resulting in a serious and permanent

injury. The trial court sustained the demurrer to this pleading, and, the plaintiff not desiring to plead further, judgment was entered upon the demurrer. To that judgment error is prosecuted to this court.

The ground for sustaining the demurrer was that the plaintiff was a mere licensee; that the pool was in no way concealed from view; that the failure of the plaintiff to see the pool was due to the darkness, for which the defendant was not responsible; that the defendant was not required by law to keep its premises lighted at night, and that the case falls under the doctrine laid down in *Hannan, Admr.*, v. *Ehrlich*, 102 Ohio St., 176, 131 N. E., 504. The pertinent paragraph of the syllabus in that case reads:

"A licensee takes his license subject to its attendant perils and risks, and the licensor owes him no duty except to refrain from wantonly or wilfully injuring him and to exercise ordinary care after discovering him to be in peril; he should not be exposed to hidden dangers; pitfalls or obstructions."

The *Hannan case* is not, however, decisive of the case at bar. The court expressly recognizes that liability may arise in favor of a licensee where the licensor is guilty of no wanton conduct. The court, at page 186 (131 N. E., 507), says of the general rule laid down in the syllabus quoted:

"Included in the foregoing rule there should be the further statement that the licensee should not be exposed to hidden dangers, pitfalls or obstructions."

In a later case, *Union News Co.* v. *Freeborn*, 111 Ohio St., 105, 107, 144 N. E., 595, the court points out another exception to the general rule on which the *Hannan case* was disposed of by saying:

"The owner, being aware of the presence of a

licensee, or even a trespasser, is required to use ordinary care to avoid injury to him arising from the active negligence of such owner or his servants.''

The question that awaits solution is just what liability arises against an owner and in favor of a licensee under the doctrine enunciated in the *Hannan case* to the effect that the licensee should not be exposed to hidden pitfalls or obstructions. In some jurisdictions, where the doctrine of the *Hannan case* obtains, it is held that an implied licensee may recover if his licensor should without notice make more dangerous a path which the licensee had been permitted to use. *Morrison* v. *Carpenter,* 179 Mich., 207, 146 N. W., 106, Ann Cas., 1915D, 319. In the latter volume the annotator lays down the general, but not universal, rule thus:

''The general rule is that where the owner or occupant of premises, with knowledge and for a long period of time, permits the public to use the premises without objection, for the purpose of traveling across the same on a well-established and safe path or highway, he cannot, without giving notice, render the premises unsafe to the injury of those who have used such highway, and have no notice of the changed condition, without being responsible for the resulting injury.''

This same general rule is reiterated in *Douglas* v. *Bergland,* 216 Mich., 380, 185 N. W., 819, 20 A. L. R., 202, and the cases there assembled indicate that many, but not all, jurisdictions adhere thereto. Ohio is classified with those that follow the general rule on the authority of *Buchtel College* v. *Martin,* 1 C. C. (N. S.), 508, 15 C. D., 494. Assuming that Ohio is aligned with those states that follow the general

rule, and not with Massachusetts and those other states that pursue a harsher course towards trespassers and licensees, it is necessary to ascertain just what is required to give rise to the liability of the owner by reason of changes occurring along a way used by others, without invitation, but with the tolerance of the owner.

The English courts early recognized the difficulty of safeguarding the rights of both licensor and licensee in the use of the former's property by the latter. They were disinclined to charge the landowner with the duty of making repairs on a path for the benefit of those he was accommodating with a permissive use. On the other hand, they were disinclined to the callous rule that the licensor might do anything to the licensee short of shooting him, or wantonly running him down, as Mr. Justice Holmes indicated to be the Massachusetts rule. *Reardon* v. *Thompson,* 149 Mass., 267, 21 N. E., 369. There was, therefore, evolved the rule that one licensed to use a traveled way should enjoy the same without having a new danger thereon created by the active negligence of the licensor. New York recognized this rule in *Nicholson, Admx.,* v. *Erie Rd. Co.,* 41 N. Y., 525, and it has been expressly followed in other jurisdictions, all of which is developed in a note to *Brigman* v. *Fiske-Carter Construction Co.,* in 49 A. L. R., 778. The Ohio authorities, so far as they have dealt with the question, are in harmony with this doctrine. In *Buchtel College* v. *Martin, supra,* it was said that, where a person is permitted, but not invited, to use a pathway, the owner is under no obligation to keep it in repair, but that he cannot make pitfalls or other dangerous alterations without notice. In *Union*

*News Co.* v. *Freeborn, supra,* the owner was held responsible to a licensee because of the active negligence of the owner. When the *Hannan case* recognizes possible liability for pitfalls and obstructions, we conclude that it means such pitfalls, etc., as are due to the active negligence of the licensor, and that a mere failure to do something that might obviate the danger to the licensee creates no liability. The hidden dangers, pitfalls, and obstructions, referred to in the *Hannan case,* that might result in liability to the licensee, consequently mean dangers of that character arising through the active, and not the passive, negligence of the licensor.

In the case at bar, the plaintiff pleaded against the landowner acts of omission only. He does not question that the landowner had a right to maintain a bathhouse and to conduct hot water thereto. It is not alleged that the hot water pipes were disconnected or broken through any negligence of the owner. What the plaintiff charges is that, after the pipes were severed and an accumulation of hot water had formed, the defendant did *not* give warning thereof, and did *not* erect any barrier or guard around the pool, and inferentially he pleads that the defendant furnished no light at the point of danger. None of these pleas charges active negligence. Hence no case was made, and the trial court was right in sustaining the demurrer.

*Judgment affirmed.*

THOMAS, P. J., and MIDDLETON, J., concur.