

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS.
~~RD~~
ATTORNEY GENERAL

Honorable Ray Winder
County Attorney
Cooke County
Gainesville, Texas

Dear Sir:

Opinion No. 0-6579
Re: Whether that part of Lake
Texoma into which Hickory
Creek flows is "a public
body of surface water of
this State" within the
meaning of Article 698b,
Vernon's Annotated Penal
Code, prohibiting pollu-
tion of public bodies of
surface water.

This will acknowledge receipt of your letter dated
May 9, 1945, requesting an opinion of this department which
reads in part as follows:

"Reference is had to Article 698b, Penal Code
of the State of Texas, on the subject of pollution
of public bodies of surface water in Texas.

". . . .

"Hickory Creek is situated in the Walnut Bend
Oil Field area of Cooke County. It is a small creek,
often dry, but when it rains there is sometimes con-
siderable water flowing through it. This creek flows
into Texoma Lake and I understand this Lake is owned
by the Federal Government. There is no stream or
other body of water flowing into Hickory Creek, but
as aforesaid, Hickory Creek flows into said Lake
Texoma.

"In view of the definition of 'public body of
surface water of this State', set forth in Sec. 3 of
said Act, and the fact that Hickory Creek is
not subject to overflow from or into a stream,
which is the property of the State of Texas
or any subdivision thereof, and due to the
fact that said Hickory Creek overflows into

Lake Texoma, which is understood to be the
property of the United States and not the
property of the State of Texas or any subdivi-
sion thereof, your opinion is desired as to
whether pollution of Hickory Creek is an
offense under said law.

"In this connection your attention is in-
vited to Article 4444, Revised Civil Statutes
of Texas, authorizing injunction against per-
sons, corporations, etc., to prevent further
polluting of public waters.

"It is the opinion of the writer that by
reason of the peculiar wording of Sec. 3, Arti-
cle 698b, Penal Code, no offense is committed
by reason of the pollution of Hickory Creek in
Cooke County, and that the only remedy available
for such pollution in this particular case is by
injunction under the provisions of Article 4444,
Revised Civil Statutes, which the case of Goldsmith
& Powell vs. State, 159 S.W. (2) 534, error refused,
holds may be granted without a prior conviction
under the Criminal Statute.

". . . ."

Article 698b, Vernon's Annotated Penal Code, reads
in part as follows:

". . . .

"'Sec. 2. 'Pollute' is hereby defined to be
the throwing, discharging, or otherwise permitting
to reach or to be introduced into any public body
of surface water of this State any substance,
material or thing in such quantity that the said
water is thereby rendered unfit for one or more
of the beneficial uses for which such water was
fit or suitable prior to the introduction of
such substance, material or thing, or is thereby
rendered harmful to public health, game birds,
or game animals, fish or other edible aquatic
animals, or endangers any wharf, or endangers or
hinders the operation of any boat, or renders in-
sanitary or unclean any bathing beach.

"Sec. 3. The term 'public body of surface water of this State' shall include all surface creeks, rivers, streams, bayous, lagoons, lakes and bodies of surface waters that are fed by a stream or are subject to overflow from or into a stream which are the property of the State of Texas or any subdivision thereof, and all portions of the Gulf of Mexico within the gulfward boundary of the State of Texas and all inland waters of the State of Texas in which the tide ebbs and flows . . . ."

We usually accept the facts stated in an opinion request as the basis of our opinion. However, as a constitutional officer, the Attorney General, like the Courts, is bound to take notice of the territorial extent of the jurisdiction exercised by the government whose laws he administers. Accordingly, we must inquire into your statement that Lake Texoma "is owned by the Federal Government". Since the United States is a sovereign, the extent of the territorial jurisdiction of Texas is involved in the question.

We accept your statement "that Hickory Creek is not subject to overflow from or into a stream, which is the property of the State of Texas or any subdivision thereof." Section 3 of Article 698b provides, however, that "The term 'public body of surface water of this State' shall include all ... lakes ...that are fed by a stream or are subject to overflow from ...a stream which are the property of the State of Texas ....." This statute does not provide that the "lakes" be "the property of the State of Texas" but merely that the stream which flows into the lake be "the property of the State of Texas." However, if Texas has no jurisdiction over that part of Lake Texoma into which Hickory Creek flows and if that part of the Lake is exclusively within the jurisdiction of the United States, the power of Texas to denominate such a lake a "public body of surface water of this State" might well be questioned. Your opinion request, therefore, raises two questions: first, whether or not Hickory Creek, as a stream, is "the property of the State of Texas" and second, whether or not that part of Lake Texoma into which Hickory Creek flows is a public body of surface water of this State."

In passing on the first question, it is not necessary to determine who owns the bed of Hickory Creek. If that stream has an average width of 30 feet from its mouth up to any given point, such portion of the bed of the stream is the property of the State of Texas. Article 5302, V. A. C. S. 34 Texas Jurisprudence 86. The State's ownership of the bed of statutory navigable streams which are crossed by the lines

of the original survey, was relinquished by Article 5414a
V. A. C. S. to the extent necessary to make up the acreage
called for in the original grant or patent. State vs. Brad-
ford, 121 Tex. 515, 50 S. W. (2d) 1065; Heard vs. Town of
Refugio, 129 Tex. 349, 103 S. W. (2d) 728. But regardless of
who owns the bed of Hickory Creek, we are of the opinion that
the waters of the creek are the property of the State.

Article 7467, V. A. C. S. provides in part:

"The waters of the ordinary flow and underflow and
tides of every flowing river or natural stream, of all
lakes, bays or arms of the Gulf of Mexico, and the
storm, flood or rain waters of every river or natural
stream, canyon, ravine, depression or watershed, within
the State of Texas, are hereby declared to be the prop-
erty of the State, and the right to the use thereof may
be acquired by appropriation in the manner and for the
uses and purposes hereinafter provided, and may be taken
or diverted from its natural channel for any of the pur-
poses expressed in this chapter. . . ."

In construing this statute, the Supreme Court in
Turner vs. Big Lake Oil Co., 128 Tex. 155, 96 S. W. (2d)
221, at page 228 said:

"The contention here is that this article,
particularly the italicized words, makes the
water from rainfall while on the watershed, or
in ravines and draws, and while it is still
regarded in law and fact as surface water, and
before it has reached a riparian or public
stream. public waters, the pollution of which
is prohibited by positive enactment.

"The statute is capable of this construction
if it alone were to be looked to for its meaning.
It must be interpreted, however, in the light of
the Constitution and of the common law and Mexican
civil law under which lands have been granted in
this State. Miller v. Letzerich, 121 Tex. 248,
49 S. W. (2d) 404, 85 A.L.R. 451.

"Under both the common law and the Mexican
civil law, the owners of the soil on which rains
may fall and the surface waters gather are the
proprietors of the water so long as it remains on
their land, and prior to its passage into a natural
water course to which riparian rights may attach.
Farnham on Water Rights, vol. 3 § 883, and cases

cited in the note; Miller v. Letzrich, 121 Tex. 248, 254, 256, 49 S. W. (2d) 404, 85 A.L.R. 451; Hall's Mexican Law (1885) p. 402, § 1372.

"No citation of authority is necessary to demonstrate that the right of a landowner to the rainwater which falls on his land is a property right which vested in him when the grant was made. Being a property right, the Legislature is without power to take it from him or to declare it public property and subject by appropriation or otherwise to the use of another. This is so regardless of the question as to whether the grant was made by Texas or Mexico. Miller v. Letzerich, 121 Tex. 248, 49 S. W. (2d) 404, 85 A. L. R. 451. . ."

You have not given us many facts as to Hickory Creek but from the facts that you give us we believe that under Texas decisions it is clearly "a natural water course to which riparian rights may attach." 44 Tex. Jur. 14, 17. Miller vs. Letzerich, 121 Tex. 248, 49 S. W. (2d) 404, 85 A.L.R. 451; Motl v. Boyd, 115 Tex. 82, 286 S. W. 458, Hoefs V. Short, 114 Tex. 501, 273 S. W. 785, 40 A. L. R. 833; International Great Northern R. Co. vs. Reagan, 121 Tex. 233, 49 S. W. (2d) 414. In Hoefs vs. Short, supra, the Supreme Court held that Barilla Creek in Reeves County "is a stream to which irrigable rights attach." The Court in that case said:

". . . .

"These authorities and others which follow show that, while the rule as ordinarily expressed is that a water course must have a well-defined channel, bed, and banks, yet there may be instances where these are slight, imperceptible, or absent, and still a water course exist.

"All authorites agree that a current of water is necessary, yet the flow of water need not be continuous, and the stream may be dry for long periods of time. Authorities supra; 1 Kinney on Irrigation § 307; Angell on Water Courses (6th Ed.) § 4, 27 Ruling Case Law, pp 1063, 1066, 1067.

"Mr. Kinney, in the text cited (section 307), says:

'Those who are acquainted with the streams and water courses of the arid Rocky Mountain region of this country, draining as they do to steep, mountainous areas, with their swift currents running over gravelly and rocky bottoms, know that often in the dry summer months many of them are entirely dry, at least upon the surface. All of them, nevertheless, have well-defined beds, channels, banks, and currents of water, at least the greater portion of the year, and are in every respect water courses to which water rights may

attach. But it would be plainly impracticable in
this western part of the country to require that,
in order to constitute a water course upon which
rights may attach, there must be a continuous, un-
interrupted, and perennial flow of water during
the entire year, and from year to year. Hence the
requirement of the law is that in order to consti-
tute a water course the stream need not flow all of
the time.'

"The general rule is that ravines, swales,
sloughs, swamps and marshes are not water courses,
and yet they are sometimes.

"Again, it is sometimes said that, in order
to constitute a water course, there must be some-
thing more than mere surface drainage over the
entire face of a tract of land, occasioned by
unusual freshets or other extraordinary causes.
The authorities say that this is true in its
strict sense, but that surface water may collect
from such a large drainage area and be so con-
tinuous in its flow as to constitute a water
course. 1 Kinney on Irrigation, § 306, 312, 314,
315, 317; 27 Ruling Case Law, p. 1063. . . ."

It is a fact question as to whether Hickory Creek is
a "natural stream" within the meaning of Article 7467 and this
can be determined as a matter of law by proof of the extent of
the water shed it serves, the character of its bed and banks,
the length and width of the stream and the volume and frequency
of its flow. The courts will take judicial knowledge of as
many of these facts of the natural features of the State as it
can obtain from reliable sources but it is well to make such
facts readily accessible by proving them in the trial. Hoefs
vs. Short, supra, International Great Northern R. Co. vs.
Reagan, supra.

In Goldsmith & Powell, et al, vs. State, 159 S. W.
(2d) 534, cited in your opinion request, the court said:

"The waters of all natural streams of this
State and of all fish and other aquatic life con-
tained in fresh water rivers, creeks, streams and
lakes, or sloughs subject to overflow from rivers
or other streams within the borders of this State,
are declared to be the property of the State; and
the Game, Fish and Oyster Commissioner has juris-
diction over and control of such rivers and
aquatic life. Arts. 4026 and 7467 R.C.S. The owner-
ship is in trust for the people (Hoefs v. Short, 114

Tex. 501, 273 S.W. 785, 40 A.L.R. 833); and pollu-
tion of streams and water courses is condemned by
both the civil statutes. Art. 4444 and Vernon's
Annotated Penal Code Arts. 697, 698, and Art.
698a. The Constitution of Texas Art. 16
§59a, Vernon's Ann. St., designate rivers and
streams as natural resources, declares that such
belong to the State, and expressly invests the
Legislature with the preservation and conservation
of such resources . . ."

We, therefore, conclude that the waters of Hickory
Creek are "property of the State of Texas" within the meaning
of Section 3 of Article 698a, V. A. P. C.

The second question involved in your inquiry is
whether or not that part of Lake Texoma into which Hickory
Creek flows is a "public body of surface water of this State."
We are concerned here with the question of the territorial
limits of the State and if any part of Lake Texoma is subject
to the political jurisdiction of Texas, whether or not that
part of the lake is navigable in fact.

In Oklahoma vs. Texas, 258 U. S. 574, 42 Sup. Ct.
406, 66 L. Ed. 771, the Supreme Court held that no part of
Red River in Oklahoma is navigable in fact and as a non-naviga-
ble stream the ownership of the bed remained in the United States
and did not pass to the State of Oklahoma upon the admission
of that State into the union, on November 16, 1907. In other
opinions in the same case the Supreme Court fixed the boundary
of Texas as the foot of the Texas Bluffs on the South bank of
Red River or on and along the cut bank of the river on the
south side "at the mean level of the water when it washes the
bank without overflowing it." 252 U. S. 372, 40 Sup. Ct. 353,
64 L. Ed. 619, 260 U. S. 606, 43 Sup. Ct. 221, 67 L. Ed. 426.
The North boundary of Texas was fixed and marked pursuant to
the several decisions rendered in Oklahoma vs. Texas and such
boundary is the present boundary of Texas. Texas still has
jurisdiction over that part of Lake Texoma within its present
boundaries, unless it has lost its jurisdiction by a deed of
cession to the United States.

When the Federal Government constructed the dam at
Denison, the waters of Red River which were impounded by the
dam covered the line which had been marked as the boundary of
Texas. When the waters of Lake Texoma reach the spillway, (an
elevation of 640 feet) they will inundate 41,000 acres of land
in Texas, Hickory Creek in Cooke County flows into this part
of the Lake. Our inquiry here is whether this part of Lake
Texoma is part of the State of Texas and subject to its politi-

cal jurisdiction.

The case of Curry vs. State, 12 S. W. (2d) 796 is decisive of this question so far as your inquiry is concerned. In that case, the appellant was convicted of the offense of unlawfully seining within certain prohibited waters in Nueces County. It was shown that the offense was committed within the United States reservation at Port Aransas, Texas. "This land on the date of the alleged offense was shown to be a United States Military reservation, in use as such and being in the actual custody and control of the War Department of the United States Government." In a well reasoned opinion the Court of Criminal Appeals affirmed the conviction and held that Texas had never lost jurisdiction over the land situated in the reservation. The Court pointed out that "there is neither constitutional nor statutory inhibition against ownership of land by the United States government in Texas" but it held that the only means by which the United States government could acquire constitutional jurisdiction over the land so acquired, to the exclusion of Texas jurisdiction, was by procuring a deed of cession from the Governor of Texas, pursuant to Article 5247 V.A.C.S. The court in that case took judicial notice of the fact that no deed or cession had been made to the land included in the United States reservation at Port Aransas.

We have examined the records of the office of the Secretary of State and find no deed of cession to the land in Texas which is presently covered by the waters of Lake Texoma. That part of the Lake is therefore still subject to the jurisdiction of the State of Texas. Fort Leavenworth R. Co. vs. Lowe, 114 U. S. 525. 5 Sup. Ct. 995, 29 L. Ed. 264, Surplus Trading Company vs. Cook, 309 U. S. 104, 60 S. Ct. 436, 84 L. Ed. 603.

There still remains the question of whether or not that part of Lake Texoma which is subject to the political jurisdiction of Texas is "a public body of surface water". In Texas, the question of whether a lake is a public or private body of water is determined by whether or not it is navigable in fact. Welder vs. State, 196 S. W. 868, error refused; Taylor Fishing Club vs. Hammett, 88 S. W. (2d) 127, error dismissed. This is the rule at common law and the rule with reference to public waters of the United States. United States vs. Holt State Bank, 270 U. S. 49, 46 Sup. Ct. 197, 70 L. Ed. 465; Hardin vs. Jordan, 140 U. S. 371, 11 S. Ct. 808, 838, 35 L. Ed. 428. From the data available to us it appears that the reservoir of Lake Texoma is the sixth largest in the United States and when the lake is full it will have inundated 26,000 and acres in Texas/69,000 acres in Oklahoma. This totals approximately 140 square miles. This is based on elevation at 617 feet which is the normal pool. At elevation of 640 feet

(spillway crest), reservoir will inundate 41,000 acres in Texas and 105,000 acres in Oklahoma for approximately 220 square miles. It appears that Lake Texoma is a navigable lake in fact and in law under the authorities above cited. Welder vs. State, supra, United States vs. Holt State Bank, supra.

We assume that the Federal Government has purchased from the various owners thereof all of the land presently covered by that part of Lake Texoma which is situated in Texas. The fact of ownership of this land in a proprietary capacity does not, under State law, destroy the public character of the water which overlays the land. Diversion Lake Club vs. Heath, 126 Tex. 129, 8 6 S. W. (2d) 441. In that case the facts were that a dam was constructed across the Medina River causing the waters of the river to form Diversion Lake which covered the lands owned by the Diversion Lake Club. The Club contended that it was a private and not a public lake and that the public had no right to fish in it. In holding that the waters of the lake were public waters, the Supreme Court said:

"Plaintiff in error insists that, even if defendants in error should be accorded the right to fish in the waters of the lake above what was the bed of the river, they would in no event be entitled to fish in that part of the water above so much of the bed of the lake as is owned by plaintiff in error. This position is untenable, because the water of the lake, notwithstanding the fact that most of its bed is privately owned, is still public water. It is a part of the flood water of Medina river which the irrigation company has the right to impound and divert for irrigation. The permit acquired by the irrigation company carried with it the incidental right to construct and maintain the dam and the lake. It gave no title to the water, but only the right to divert and use so much of the water appropriated as might be necessarily required when beneficially used for the purpose for which it was appropriated. R. S. 1925, arts. 7467, 7468, 7473, 7476, 7492, 7515 and 7543; Motl v. Boyd, 116 Tex. 82, 125, 126, 286 S. W. 458. It gave no title to the fish in the water of the lake, no exclusive right to take the fish from the lake, and no right to interfere with the public in their use of the river and its waters for navigation, fishing, and other lawful purposes further than interference necessarily resulted from the construction and maintenance of the dams and lakes in such manner as reasonably to accomplish the purpose of the appropriation.

> "When the irrigation company, plaintiff in error's predecessor in title, constructed the dam across the river, it caused by its voluntary act the flood waters of the river, public waters, to spread over the land which it had acquired, submerging and in effect destroying a portion of the river bed, and giving to the public waters a new bed. This artificial change in the river and its bed did not affect the public nature of the waters and did not take away the right of the public to use them for fishing. Douglas v. Bergland, 216 Mich. 380, 185 N. W. 819, 20 A.L.R. 197; Mendota Club v. Anderson, 101 Wis. 479, 78 N. W. 185; Pewaukee v. Savoy, 103 Wis. 271, 79 N.W. 436, 50 L.R.A. 836, 74 Am. St. Rep. 859; 27 R.C.L. p. 1205, § 122. . . ."

There is no question here of any conflict between State and Federal regulations with reference to the use of the waters of Lake Texoma. We hold only that until a deed of cession is made by the Governor of Texas to the United States ceding the land in Texas covered by the waters of Lake Texoma, that such waters constitute a "public body of surface water of this State."

We are, therefore, of the opinion that the pollution of Hickory Creek is an offense under Article 698a, Vernon's Ann. Penal Code.

APPROVED JUN 4, 1945          Yours very truly,

/s/ Grover Sellers          ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

APPROVED                    By /s/ Fagan Dickson
OPINION                          Fagan Dickson
COMMITTEE                          Assistant
BY /s/ BWB
CHAIRMAN

FD:rt-dhs