Richard VEACH, Appellant,

v.

PORT MACHINE, INC., et al., Appellees.

No. 422.

Court of Civil Appeals of Texas.

Corpus Christi.

July 31, 1968.

Rehearings Denied Sept. 12, 1968.

Robert J. Seerden, Victoria, for appellant.

Robert C. Grossheim, Houston, Guittard, Henderson, Jones & Lewis, O. F. Jones, Victoria, for appellees.

OPINION

SHARPE, Justice.

This appeal is from a summary judgment that appellant Richard Veach take nothing against appellees Port Machine, Inc., sometimes hereafter "Port", and Texaco, Inc., sometimes hereafter "Texaco".

Veach sued appellees for damages on account of personal injuries suffered by him when he fell over a water line installed by Port for Texaco at a boat basin owned by the Matagorda County Navigation District No. One, part of which had been leased to Texaco.

The motions for summary judgment of Port and Texaco were based upon the contention that each of them owed no duty to Veach and were not liable for his alleged injuries because he was a trespasser on the premises in question and there was no allegation of intentional harm. Texaco also alleged in its motion for summary judgment that Port was an independent contractor for whose acts Texaco would not be responsible even if the same proved to be negligent.

Appellant, by two points, contends that the trial court erred in granting summary judgment in favor of Port and Texaco.

The summary judgment evidence consists of three depositions and one affidavit. The depositions were given by plaintiff Veach, Paul Lee Miller, Vice-President of Port, and J. R. Stevens, Assistant District Superintendent of Texaco, which district included Matagorda County, Texas. The affidavit was given by Eli Mayfield, attorney for the Matagorda County Navigation District No. One.

The deposition testimony of Veach reflects the following: He is a small commercial fisherman residing in Palacios, Matagorda County, Texas. At about 5:15 A.M. on September 17, 1966 while it was still dark he drove his pickup truck to the area where his boat was tied up at the Matagorda County Navigation District No. One dock. He intended to go shrimping that day. He parked his pickup, started to his boat and tripped over a newly installed pipe which was above the ground about one foot, resting on a piece of stump. Veach fell off the dock into his boat, sustaining various injuries to his body. Veach said he did not see the pipe prior to tripping on it. Veach had been docking his boat at said location for about three months prior to the accident, but he had not used it for four days prior thereto. There were no signs, lights or other warning or protective devices near the pipe. An employee of Veach was on the opposite side of the pickup from where Veach fell, came over and helped Veach get up and then drove him home.

The deposition testimony of Paul L. Miller reflects the following. He is Vice-President of Port Machine, Inc. His company installed a temporary water line for Texaco at the location in question on September 16, 1966. Miller acted pursuant to an agreement with Mr. J. R. Stevens, Assistant District Superintendent for Texaco. Stevens and Miller went together to the location where the water line was to be installed, and Stevens explained what was to be done. The fitting for the end of the line was not available on the day it was laid and was not installed until a few days later. Miller testified that the dock in question was constructed about 1954 or 1955, and he helped build it. He had been familiar with it since then until the

present. It was customary for people, the general public, to tie their boats up along this particular turning basin or dock whether they had a lease or not. That practice had been going on ever since the basin was put in. People left their boats for a day or two or longer and used the area between the road and the bulkhead where their boats were tied up. He did not recall any signs to indicate where the Texaco lease was located.

The deposition testimony of J. R. Stevens reflects the following. He is Assistant District Superintendent for Texaco. The work was done by Port pursuant to agreement with Texaco. Texaco had an oral agreement with the Navigation District on a monthly basis for use of a portion of the District's property. Stevens negotiated the agreement with Eli Mayfield, attorney for the district, about one week before the water line was laid. Texaco's purpose in leasing the area in question was in connection with work preliminary to moving in a rig to drill a well at a location not specifically identified. Stevens said that the agreement involved about 250 feet along or near the bulkhead or docks on the Navigation District property. Stevens and Miller went to the area where the water line was to be laid, and Stevens lined Miller up on the work. Stevens instructed Miller about laying the line in certain places, told him to bring it to about the middle of the leased area, and to put a valve on the end of the line. Stevens was not present on the day the line was installed by Port but went to its location the next day when Veach called him early in the morning about the accident and his injuries. Veach told Stevens that he had fallen over the line, which had been propped up there, into his boat and had hurt his back. The deposition of Stevens further reflects the following questions and answers:

"Q When you went down to the dock down there, tell us what you found.

A Well, I found the line laid, as near as I could tell, as I directed Mr. Miller to lay it, with a block under the end of the line.

Q And where was the line, I mean with respect to your leased area?

A It was laid along the edge of the dock there.

Q And you say it was on a block?

A No, sir. I said the end of it was blocked up.

Q Yes. And that was on approximately midways through your leased area?

A Yes, sir.

Q How was it blocked up?

A It was just what looked like an old chunk of wood under the end of it there.

Q And about how high off of the ground.

A I will say about six or eight inches.

Q How far from the edge of the dock was it?

A Approximately a foot or a foot and a half from the edge of the dock.

Q Out on the shell?

A On the shell.

Q So, from the beginning of your leased area the pipe was not in the area between * * *

A As I recall, it was not.

Q In between the piling and the wooden area there, somewhere between the place where you started, or the line was started, and where the end of it was, it was moved out of that area, is that correct?

A I believe that is correct.

Q. And it was laying out onto the shell?

A Yes, sir.

Q About a foot or foot and a half, and the end of it was propped up on a piece of wood?

A Old rotten limbs or log or something stuck under the end of it."

Stevens further testified he knew that shrimpers and others customarily used areas of the basin for tying up their boats. He also said that on the occasion in question there were no signs or markers showing the location of Texaco's lease or to distinguish it from unleased portions of the area, although markers were then being made for such purpose and were later placed on the property. The pipe and some of the fittings for the water line were furnished by Texaco.

The affidavit of Eli Mayfield reflects the following. He is attorney for Matagorda Navigation District No. One. The Navigation District owns and operates certain premises and dock areas adjacent to premises occupied by Port Machine, Inc. About September 1, 1966, Mayfield on behalf of the Navigation District negotiated an oral lease agreement with Texaco, represented by J. R. Stevens, covering about 250 feet of the dock frontage on the premises of the District. Mayfield said that it had been the practice of a number of shrimp boat operators to tie up their boats at empty areas of this dock and to use the facilities without paying rent. He further said that such boat operators were usually residents of the county or their business contributed to the economical well being of the county, and the Navigation District had not in the past formally objected to these shrimp boat operators using these facilities when they were not otherwise rented or being used by the Navigation District. Mayfield said he told Stevens that "we would clear the area when he was ready for it." There is no evidence that Stevens or anyone else told the Navigation District that Texaco or Port was ready for the area to be cleared. Mayfield further said that to the best of his knowledge no one on behalf of the Navigation District had given Veach permission to use the premises where Veach claimed to have been injured, nor had they invited Veach on the premises. Mayfield's affidavit contains a number of legal conclusions to the effect that Veach's "status on the premises was that of a trespasser as opposed to an invitee, licensee or other form of use." Counsel for Veach properly objected in writing to such conclusions in Mayfield's affidavit.

We have concluded that the trial court improperly sustained appellees' motions for summary judgment. The summary judgment evidence was legally sufficient to raise genuine issues of material fact as to the liability of each appellee to Veach. The applicable summary judgment rules are stated by the Supreme Court in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 46 (Tex.Sup.Ct.1965).

■ The summary judgment evidence does not conclusively establish that Veach was a trespasser. The evidence was legally sufficient to raise a fact issue as to whether he was an invitee or licensee. If he was an invitee, the owner or occupier of the premises owed him a duty to exercise reasonable or ordinary care to have his premises in a reasonably safe condition for use by them. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup. Ct.1963). If Veach was only a licensee, nevertheless, he could recover on the basis of the rule stated in Gulf Refining Co. v. Beane, 133 Tex. 157, 127 S.W.2d 169 (1937). In that case Beane sued Gulf to recover damages for personal injuries suffered when he fell into an excavation made by employees of Gulf. Gulf had leased the premises for a filling station and it had been operated under an agency agreement by Alfred Collins, who also operated a store adjacent to it. The evidence

showed that there was a trail coming from the north which passed through the filling station area which had been used for several years by persons going to the adjoining store. Although the jury found that Gulf was guilty of negligence proximately causing Beane's injuries, the trial court rendered judgment for Gulf despite such findings on the theory that Beane was only a licensee and Gulf did not owe him a duty to warn him by putting lights at the hole to guard against the accident. The Court of Civil Appeals reversed and rendered judgment for Beane on the authority of Kallum v. Wheeler, 129 Tex. 74, 101 S.W. 2d 225. The Supreme Court affirmed the judgment of the Court of Civil Appeals, but upon different grounds, holding as follows:

"The decision in the case of Kallum v. Wheeler, supra, is predicated squarely upon the proposition that the injured party in that instance was upon the premises of the defendant 'by invitation or inducement express or implied.' In the present case we do not think plaintiff can be regarded as an invitee, as that term is usually defined. We think he was, at the most, only a licensee on the property of defendant at the time he was injured; and the general rule is that defendant did not owe him the duty of placing a light at the hole at the time in question. Galveston, H. & S. A. Ry. Co. v. Matzdorf, 102 Tex. 42, 112 S.W. 1036, 20 L.R.A.,N.S., 883, 132 Am.St.Rep. 849; Dobbins v. Missouri, K. & T. Ry. Co., 91 Tex. 60, 41 S.W. 62, 38 L.R.A. 573, 66 Am.St.Rep. 856; Street Realty Co. v. Forrister, Tex.Civ.App., 22 S.W. 2d 746; McGinty v. Texas P. & L. Co., Tex.Civ.App., 71 S.W.2d 354, writ refused; Mendoza v. Texas & P. Ry. Co., Tex.Civ.App., 70 S.W.2d 261; Kruse v. Houston & T. C. Ry. Co., Tex. Civ.App., 253 S.W. 623.

"Counsel for plaintiff apparently recognize this general rule, and seek to bring this case within an exception to same. There is such exception, and we think the circumstances in this case raised an issue of fact as to its application. This exception has been tersely stated by the annotator in the annotation following the case of Douglas v. Bergland, 216 Mich. 380, 185 N.W. 819, 20 A.L.R. [197] 202. The rule as stated is as follows: 'The general rule is that where the owner or occupant of premises, with knowledge, and for a long period of time, permits the public to use the premises without objection, for the purpose of traveling across the same on a well-established and safe path or highway, he cannot, without giving notice, render the premises unsafe to the injury of those who have used such highway, and have no notice of the changed condition, without being responsible for the resulting injury.' "

The Court applied the above stated rules to the facts in *Beane*, which are highly analagous to those herein, and held that they were sufficient to raise an issue as to Gulf's duty. The evidence in this case, when considered most favorably to appellant, shows that the water line in question was installed in a manner which involved an unreasonable risk of causing injury to persons using the premises. The officials of both Port and Texaco had notice or knowledge that boat owners or operators such as appellant customarily used the area where the water line was installed. The evidence further shows that appellant did not have notice or knowledge of the installation of said line prior to the accident. Cf. Gonzalez v. Broussard, 274 S.W.2d 737 (Tex.Civ.App. San Antonio, 1955, wr.ref. n.r.e.).

We are not here concerned with the rights or liabilities of Texaco and Port as between themselves. The summary judgment in favor of appellees here cannot be sustained on the record here presented. Bolin v. Tenneco, 373 S.W.2d 350 (Tex.Civ. App. Corpus Christi, 1963, wr.ref.n.r.e.).

The judgment of the trial court is reversed and the cause is remanded for trial.