## FREEMAN v. B. F. GOODRICH RUBBER CO. et al.

### No. 12567.

Court of Civil Appeals of Texas. Dallas.

March 18, 1939.

Rehearing Denied April 15, 1939.

Smithdeal, Shook & Lefkowitz, of Dallas, for appellant.

Saner, Saner & Jack and Alfred Sallinger, all of Dallas, for appellees.

LOONEY, Justice.

Earle Freeman appealed from an adverse judgment rendered in his suit filed April 1, 1936, in the nature of a bill of review, to vacate a judgment against him, rendered by the court below on June 25, 1923, in favor of B. F. Goodrich Rubber

Company, appellee. The ground on which appellant sought to vacate was that, the court rendering the judgment was without jurisdiction of his person, in that, he was never served with citation, did not appear in the case and had no knowledge of the pendency of the suit or of the rendition of the judgment, until in September, 1933, at which time, he was informed by a deputy sheriff of Dallas County that he held an alias execution issued on the judgment.

We do not deem it necessary to summarize the pleadings, as the decision will turn on the question of limitation; that is, whether appellant's suit to vacate was brought within four years after he acquired knowledge of the existence of the judgment, or within four years after appellee attempted to enforce the same. The case was tried without a jury; the court filed lengthy findings of fact, largely evidentiary, from which we will make a liberal statement, in order to show the events leading to the institution of the suit.

The court found that, about March 15, 1915, appellant and one James Fanning composing a partnership, styled "20–20 Company or Tire Company", were engaged in buying and selling tires in the City of Dallas; that about May 1, 1915, the partnership was indebted to appellee for merchandise, in the sum of $3,641.65 and, on that date, for a valuable consideration, appellee discharged and released appellant from liability for such indebtedness, and that from said date, the "20–20 Company" was operated by James Fanning and one R. R. Farry, as copartners, appellant having no further connection with the business; that on October 11, 1915, appellee field suit below, its docket number being 21113–B, styled B. F. Goodrich Rubber Company v. Earle Freeman, et al., against appellant and others, alleging an indebtedness against the defendants of $4,319.90, as shown by an itemized verified account, same being an indebtedness held by the Rubber Company against the "20-20 Company", in which appellant formerly was a partner with Fanning; that citation was issued thereon October 15, 1915, and, although the sheriff's return showed service on appellant, that, in fact, he was not served at all and, although attorneys filed a general answer therein for "defendants", that appellant did not employ said attorneys and their act in filing the answer was without appellant's knowledge or consent;

that on June 25, 1923, the judgment sought to be vacated was rendered against appellant and others, but that "the said defendant Earle Freeman did not know of the filing or pendency of said suit and did not know that said judgment had been entered therein against him until some time after said judgment had been entered as referred to herein below"; that Charles D. Turner, of counsel for appellee in the cause that resulted in the judgment sought to be vacated, was diligent in prosecuting the suit to final judgment, but was not advised that appellant had not been previously served with citation or that the attorneys who filed an answer in said cause for "defendants" were not authorized to represent appellant; that prior to his partnership with Fanning in the "20-20 Tire Company", appellant had been engaged in the tire business with one W. A. Gibson, and that judgments had been rendered against appellant and others on account of the failure of said business; that appellant knew of the existence of the judgments growing out of the latter partnership, and that shortly prior to November 26, 1926, Geo. K. Holland, a practicing attorney of Dallas, was employed by one Earl C. Freeman to cure certain objections made to the title to certain real estate in the City of Dallas, owned by him; said objections arose by reason of the judgments against appellant above mentioned, the same having been abstracted in the judgment abstract records of Dallas County; so, Mr. Holland communicated by telephone with appellant to ascertain if he were the Earle Freeman named in the said abstracts of judgment, and, in that connection, inquired if he were "the Earle Freeman who was formerly in partnership with W. A. Gibson in the tire business," and that, after the telephone conversation, appellant went to the office of the attorney on November 26, 1926, and made an affidavit (evidently prepared beforehand) substantially as follows: stating therein that his name was Earle Freeman, that he had resided in the City of Dallas twenty years; that he used the name Earl Freeman in his business transactions, stating, "I am the Earl Freeman who was defendant in the following styled and numbered cases", naming four cases by number and style, and the courts in which they pended, including "B. F. Goodrich Rubber Company v. Earl Freeman, et al., No. 21113–B in the 44th Judicial District Court of Dallas County, Texas", stating further that "in

each above styled and numbered case judgment was rendered against me as well as the other persons named therein and said judgments are of record in the abstract judgment records of Dallas County, Texas, as follows (naming volumes and pages)"; stating further that he had never gone under the name of Earl C. Freeman, had never done business or owned property under that name; that he was not and never had been the owner in whole or in part of any interest in the real estate owned by Earl C. Freeman; that he knew Earl C. Freeman, but was not related to him. The court further found that appellant read the affidavit, but "that his reading thereof was hurried and superficial and that he did not actually realize and understand that the affidavit contained any reference to any suit against him by the B. F. Goodrich Rubber Company, growing out of said Earle Freeman's partnership with James Fanning and that he did not actually realize and understand that such judgment had been entered against him until September, 1933, when a deputy sheriff of Dallas County, by telephone, advised him that an alias execution had been issued on said judgment". The court also found that neither misrepresentation, concealment nor fraud of any nature was practiced upon appellant and that he "had full opportunity to read and understand said entire affidavit before he signed, subscribed and swore to same".

The court then drew the following legal conclusions: That, as the affidavit contained sufficient notice as to the existence of the judgment in question, appellant "was thereby placed under the duty of inquiry as to same; and that an inquiry and investigation by him would have disclosed all facts as to said judgment * * * that the fact said Earl Freeman did not actually realize and understand that said judgment was in existence after seeing and executing said affidavit was due solely to the failure on his part to exercise reasonable diligence, being such diligence as an ordinarily careful and prudent person would have exercised under the same or similar circumstances and that the same constituted negligence on his part", concluding that, from and after the execution of said affidavit, appellant "had knowledge of and notice as to the existence of said judgment * * * that on November 26, 1926 (the date of the affidavit) the statute of limitation commenced to run as to the right of said Earl Freeman to bring suit seeking to set aside said judgment * * *; that as this suit was not filed until April 1, 1936 (over nine years after the date of the affidavit), seeking to set aside said judgment, is barred by the four years' statute of limitation".

Reduced to the last analysis, the Court's fact findings are to the effect that, although the affidavit contained recitals in regard to the judgment, appellant's reading of same was hurried and superficial, that he did not actually realize that the affidavit contained any reference to a suit by the Rubber Company, growing out of the Freeman and Fanning partnership, and, in fact, did not realize that the judgment had been rendered against him until in September, 1933, when the deputy sheriff 'phoned that he held an alias execution issued thereon; but, because appellant had an opportunity to read and understand the affidavit, which, if done, would have disclosed to him the existence of the judgment, that it was his duty to have done so and that, his failure to discharge that duty was negligence; hence, the statute of limitation began to run November 26, 1926, the date of the affidavit, and his right to vacate the judgment was barred by the four years' statute of limitation when he instituted the present suit on April 1, 1936. Reduced to a simpler statement, the court predicated its judgment denying appellant the relief sought, on the doctrine of negligence, holding that, although, in fact, appellant did not know of the existence of the judgment until September, 1933, nevertheless, he should have read and understood the affidavit which referred to the judgment and, failing to do so, was guilty of negligence, hence the statute of limitation was put in operation on the date of the affidavit (November 26, 1926).

So, we are confronted with this question: Did appellant owe appellee any duty in the premises, or, to state the question differently,—was appellant guilty of negligence in failing to read and understand the rather cryptic reference to the suit and judgment? If no such duty rested upon him, he was not guilty of negligence and the statute of limitation was not put in operation until September, 1933, when, for the first time, he learned of the existence of the judgment.

It is elementary that, negligence results as a corollary from unperformed duty, and is composed of three elements: (1) duty to protect another from injury; (2) failure to perform the duty; and (3) an injury resulting to the one to whom

the duty was owing. See 45 C.J. Sec. 2, page 361, 362; also Section 16, page 639–642, and the authorities cited. Can it be correctly said that, appellant owed appellee any duty to read and understand the affidavit, or that his failure to do so injured appellee in any respect? We do not think so. Obviously, appellant owed it to himself, and those he was accommodating, to be accurate in his sworn statements, but, in signing the affidavit, he did not assume any contractual obligation; his personal interests were not involved; he was not seeking a personal benefit or advantage, but made the affidavit purely as an accommodation. The record discloses that appellant bore a name very similar to the name of another citizen, the title to whose land, rested somewhat under a cloud, by reason of certain judgments against appellant having been abstracted and, at the request of the attorney, who represented the other Earl Freeman, and, simply as an accommodation, appellant made the affidavit, in order to remove the apparent cloud that rested upon the title to land belonging to the other Freeman.

■ The rigid rule of law applied on the trial below, is only applicable where contractual relations are assumed by the execution of written instruments. The rule announced in 6 R.C.L. 624, 625, Sec. 43, is that: "A contract signed by mistake, that is, under the supposition that it is an instrument of another or different character, is void. But the courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents, and who sustains no confidential relation to the other party, cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it. If the contract is plain and unequivocal in its terms he is ordinarily bound thereby. It is the duty of every contracting party to learn and know its contents before he signs and delivers it." The reason underlying the rule, stated in the same section, is that: "He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible * * *."

■ The court found as facts, that appellant did not owe the debt upon which he was sued, was never served with citation and made no appearance in the case, and that, although he read the affidavit, "his reading was hurried and superficial, and that he did not actually realize and understand that the affidavit contained any reference to any suit against him by the B. F. Goodrich Rubber Company growing out of said Earle Freeman partnership with James Fanning, and that he did not actually realize and understand that such judgment had been entered against him until September, 1933." Conscious that he owed appellee nothing, never having been cited in the case, ignorant of the existence of the judgment, can it be correctly said that appellant was burdened with any duty to discover the void judgments? We do not think so. The suit to vacate having been filed within four years from the time (September, 1933) the court found that appellant acquired actual knowledge of the existence of the judgment, his cause of action was not barred at the institution of the suit, hence, the court below erred in so holding.

■ Appellant also insists that, as between the original parties in a direct attack, the judgment being void, limitation did not begin to run against his action for equitable relief until some action was taken by appellee, that indicated a purpose to enforce the same. So far as disclosed by the record, appellee had taken no action indicating a purpose to enforce the judgment as against appellant until September, 1933, when the alias execution was issued and placed in the hands of a deputy sheriff of Dallas County and by him called to the attention of appellant.

In Crawford v. McDonald, 88 Tex. 626, 631, 33 S.W. 325, 328, Judge Denman, speaking for the Supreme Court, said: "The general rule is well established that a judgment rendered by a court even of general jurisdiction is void if it had, at the time of the rendition of the judgment, no jurisdiction of the person of the defendant or the subject-matter of the litigation". In the course of the discussion, Judge Denman drew the distinction between a judgment rendered without jurisdiction of the person,

but regular on its face, and one where the record revealed the want of jurisdiction, stating that "Logically, the judgment is, in fact, void, but on grounds of public policy the courts, in order to protect the property rights, apply the rule aforesaid, which precludes inquiry into facts dehors the record for the purpose of showing the invalidity of the judgment". This case was cited with approval, in Levy v. Roper, 113 Tex. 356, 361, 256 S.W. 251, announcing the same doctrine. Freeman on Judgments (4th Ed.), Vol. 1, speaking of void judgments and their effect, said: "A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void. * * * For if it be null, no action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of the elements of power or of validity. * * *". The Supreme Court of the U. S., in Harris v. Hardeman, 14 How. 334, 339, 14 L.Ed. pages 444–446, in part, said: "It would seem to be a legal truism, too palpable to be elucidated by argument, that no person can be bound by a judgment, or any proceeding conducive thereto, to which he never was party or privy; that no person can be in default with respect to that which it never was incumbent upon him to fulfil. * * *" A case in point on the question of limitation, is Stubbs v. McGillis, 44 Colo. 138, 96 P. 1005, 1007, 18 L.R.A.,N.S., 405, 130 Am.St.Rep. 116, by the Supreme Court of Colorado. Among other things, the court said: "There is another reason why the delay of the defendant could not be taken advantage of by the plaintiff, and that is: If the judgment was rendered without service upon the defendant, it was void as to him. A void judgment is worthless for any purpose and can be directly attacked at any time when the party obtaining the same seeks to derive some advantage from it." We also sustain the latter contention of appellant.

From the foregoing, it follows that, in our opinion, the holding below that plaintiff's equitable action to vacate the judgment was barred by the four year statute of limitation was error; therefore, the judgment is reversed and the cause remanded to the trial court for further proceedings. We have duly considered all cross assignments of error urged by appellee, and, finding them without merit, they are overruled.

Reversed and remanded.