John BOLIN et al., Appellants,

v.

TENNECO OIL CO. et al., Appellees.

No. 4.

Court of Civil Appeals of Texas.

Corpus Christi.

Nov. 14, 1963.

Rehearing Denied Dec. 19, 1963.

Richard Hall, of Branscomb, Gary, Thomasson & Hall, John Waller, Corpus Christi, for appellants.

James Watson, of Keys, Russell, Keys & Watson, Leslie S. Lockett, of Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellees.

SHARPE, Justice.

This is an appeal from a summary judgment rendered by the trial court in favor of appellees, Tenneco Oil Company, a corporation, hereafter called "Tenneco", and Loyd W. Richardson Construction Corporation, hereafter called "Richardson", that

appellants, John L. Bolin, Petrea Kay Bolin, Kenneth L. Pfoff and Gwendolyn Pfoff take nothing by their suit.

Appellants, who were plaintiffs in the trial court, brought suit for damages on account of personal injuries arising out of a one car accident occurring on Mustang Island Road in Nueces County, Texas, on September 24, 1961, at a place where appellees, who were defendants in the trial court, had made temporary repairs following damage originally caused by Hurricane Carla on or about September 10, 11 and 12, 1961.

The record shows that on or about September 10, 11 and 12, 1961, Hurricane Carla approached and struck the Texas Gulf Coast, including Mustang Island, causing tremendous damage. A portion of Mustang Island Road, approximately eight miles south of Port Aransas, Texas, was washed away, leaving an impassable gap of some seventy-five feet or more in said roadway. A short distance south of said washed-out area there was a private access road leading to several oil and gas installations and facilities operated by various companies, including appellee Tenneco. Tenneco, through its agents, caused repairs to be made to such washed-out area in the roadway by appellee Richardson so that vehicles of Tenneco and other companies could reach their facilities by land. Richardson deposited mud shell in said washed-out area of the Mustang Island Road and constructed ramps at both ends thereof leading to the bottom of the wash-out from the pavement. After the temporary repairs were made vehicles could travel only in one lane located on the eastern side of the Mustang Island Road. The washed-out area was not filled to the normal capacity of the road and there was a slanting drop from the top of the regular road bed to the bottom of the washed-out area of about four feet. Prior to such repairs a perpendicular drop-off of about four feet had existed at either end of the washed-out area. Vehicles of Tenneco and the other oil companies had used the said roadway where the repairs were made for about eight days prior to the accident involved in this suit.

On Sunday, September 24, 1961, appellants John L. Bolin and his wife, Petrea Kay Bolin, together with Mr. and Mrs. Pfoff, parents of Mrs. Bolin, drove from their home in Corpus Christi, Texas, to Mustang Island on a pleasure trip. After crossing the ferry to the island and proceeding through the Town of Port Aransas they drove in a southerly direction down the beach until they arrived at a place where there was water across the beach preventing cars from travelling further south. John Bolin then noticed that cars were driving on the Mustang Island Road which parallels the beach at a distance of approximately one-quarter to one-half mile to the west thereof, and that said cars were proceeding further southward than he was able to drive his car on the beach. Appellants then got into their car, proceeded in a northerly direction back to Port Aransas and then drove on to the Mustang Island Road where they again turned southward. They passed through the washed-out area where the repairs had been made by appellees and then travelled on an access road to the beach and thereafter drove southward a short distance. After appellants had engaged in beachcombing activities for several hours, they again got into their car to make the return trip home, travelling a slightly different route from the beach back to the Mustang Island Road. Appellant John Bolin, who was driving the car at said time, testified that he arrived back at the washed-out area long before he estimated he would reach it and then his left front wheel hit part of the soft bottom on the roadway and his car went out of control and was catapulted into the washed-out area, causing injuries to all the occupants of the car. The accident occurred at about dusk when it was neither daylight nor entirely dark and John Bolin testified that he was driving with the car lights turned on.

Appellants complain of the summary judgment by means of seven points of error. By their first five points appellants contend that the trial court erred in rendering summary judgment against them because appellees, having undertaken to make repairs to the Mustang Island Road, owed them a duty to exercise care in the manner in which the same were made and that the pleadings, depositions, affidavits and interrogatories on file raised fact issues with regard to breach of duty by appellees in five different respects, that is, (1) failure to properly slope the ramps which they constructed on the road bed, (2) failure to completely fill in the washed-out area rather than constructing sloping ramps, (3) failure to properly pack down the surface of the ramps constructed by them in the road bed, (4) failure to fill in the area in which the ramps were constructed to the entire width of the highway rather than only on one side, and (5) failure to erect some type of device to warn approaching motorists of the existence of the washed-out area and ramps constructed by them. Appellants, by their sixth point, contend that the summary judgment was improper because it was not established as a matter of law that John L. Bolin was guilty of contributory negligence on the occasion in question. By their seventh point, appellants contend that the record failed to establish as a matter of law that Petrea Kay Bolin, Kenneth L. Pfoff and Gwendolyn Pfoff were guilty of contributory negligence on the occasion in question.

Appellee Tenneco contends that the summary judgment was proper for the reasons set out in seven counter-points which are, in substance, as follows: (1) There was no duty owing by it to restore the washed-out area in the road caused by Hurricane Carla to a condition suitable for normal vehicular travel, (2) there was no duty owing by appellees to place any warning signs or devices at the washed-out area on a public county road, (3) no duty owing by appellees to appellants was breached because the temporary repairs were made only to permit company vehicles of appellee and its business invitees and associates to traverse the wash-out, and such repairs were not made for the use of the public since the appellee's agents causing the work to be done knew the county road had been closed to public travel, (4) appellee was only under a duty not to make more dangerous the condition of the wash-out caused by Hurricane Carla under the conditions set out in Tenneco's third counter-point stated immediately herein above, (5) the sole proximate cause of the accident was the negligence of appellant John L. Bolin, (6) the contributory negligence of John L. Bolin was a proximate cause of the accident and would bar recovery for himself and wife, Petrea Kay Bolin, and (7) any breach of duty toward appellants was on the part of Loyd Richardson Construction Company who was an independent contractor and did the work according to its own method and plan.

Appellee Richardson contends that the summary judgment was proper for the reasons set out in four counter-points which are, in substance, as follows: (1) Appellees breached no duty to appellants because the situations and any dangers were, or should have been, known to them and it was not reasonably to be expected that persons ignorant of the dangers would be exposed to them, (2) appellants are barred from recovery under *volenti non fit injuria,* (3) appellee Richardson is not liable to appellants because it did not (a) volunteer to make the repairs or (b) exercise discretion as to what should be done or (c) fail to do properly what it was employed to do, and (4) John Bolin was contributorily negligent as a matter of law and the summary judgment, in any event, was properly entered as to him and his wife.

The basis of the summary judgment rendered by the trial court is not apparent, but an analysis of the eighteen points and counterpoints before us in this case discloses that we must pass upon the questions of existence of duty, breach of duty, contributory negligence, causation and

*volenti non fit injuria;* and we must, particularly, determine whether the material facts therein involved were, or were not conclusively established. The record shows that a jury fee was paid and, therefore, if disputed material issues of fact were presented they must be resolved by a jury as the trier of the facts.

The record on this appeal consists of 336 pages. The transcript of 69 pages includes appellees' motions for summary judgment and the supporting and contesting affidavits of James C. Harris, Assistant County Engineer, Robert N. Barnes, County Commissioner, Precinct 4, Nueces County, Texas, John L. Bolin, one of the appellants, Leslie S. Lockett, attorney for Richardson, Don Hopkins, witness for appellants, as well as interrogatories and the answers thereto. In addition there are eight depositions, including four from appellants, two from employees of Richardson, one from an official of Tenneco and one other from an employee of Shell Oil Co.

■■■ In passing upon the issues presented by this appeal, we must follow the rules applicable to motions for summary judgment set out by the Supreme Court of Texas, in the case of Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1953) as follows:

"[1] The duty of the court hearing the motion for summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on affidavits. * * *

"[2] The burden of proving that there is no genuine issue of any material fact is upon the movant, and '[a]ll doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment.' * * *

"[3] 'In determining a motion thus depending upon extrinsic evidence, the court's task is analogous to that which he performs on a motion for directed verdict.

He accepts as true all evidence of the party opposing the motion which tends to support such party's contention, and gives him the benefit of every reasonable inference which properly can be drawn in favor of his position.' * * *

"[4] * * * [I]f a motion involves the credibility of affiants or deponents or the weight of the showings or it is said, a mere ground of inference, the motion will not be granted."

■■ After consideration of the briefs and record herein, we have concluded that the summary judgment in favor of appellees should not have been granted. We are unable to hold that there is no genuine issue of any material fact so that appellees would be entitled to judgment as a matter of law. This being the case, we will not discuss the facts in an anticipatory way in advance of their full development at a trial on the merits but will refer to the questions presented by the present record in order to show the basis of our holding.

In considering the question of whether there was a duty owing by appellees to appellants, it appears that on this phase of the case the summary judgment would be proper only if we can determine from the record before us that the material issues of fact which relate to existence of duty are conclusively established in favor of appellees, that is, there was no duty owing by appellees to appellants. Appellants' Point One through Five Tenneco's Counterpoints One through Four, and Richardson's Counterpoint I are here involved.

In support of their contention that appellees owed a duty to them, appellants, under their first five points, emphasize the following facts: That although the original washed-out area was caused by Hurricane Carla, the appellees changed the situation by making the temporary repairs so that an impassable route was made passable, and that such condition was dangerous to motorists; that prior to the repairs there was no vehicular traffic on the south

side of the washed-out area because there was no way to get to such area as the beach was impassable for vehicles and the Padre Island Causeway and roadway was washed out at various points to the south; that the work undertaken by appellees created a situation that did not exist before, that is, vehicles were enabled to cross the filled-in area at the wash-out and travel further south, thereby making it possible and probable that there would be traffic from south to north across said point at night-time as well as day-time; that appellees made the temporary repairs to the roadway so that vehicles operated by Tenneco and other companies could reach their facilities located south of the washed-out area by land; and that this was an affirmative undertaking by appellees of a task which they originally had no duty to perform. In such situation appellants contend that appellees had a duty to perform the said undertaking in a manner whereby the filled-in area would not only be passable but safe to the foreseeable vehicular traffic.

Appellants rely on the cases of Rick Furniture Co. v. Smith, 202 S.W. 99 (Tex.Civ. App., 1918, no writ history); Fox v. Dallas Hotel Company, 111 Tex. 461, 240 S. W. 517 (1922); and Ivey v. Phillips, 36 F. Supp. 811 (S.D.Tex., 1941), in support of their contention that one who undertakes the performance of a task which he has no obligation to perform in the first instance is charged with the duty to exercise care in the performance thereof. They also say that the case of Buchanan v. Rose, 138 Tex. 390, 159 S.W.2d 109 (1942), is favorable to them when properly construed. Appellants further say that existence of duty is not precluded because it was not conclusively established that the condition of the roadway was so open and obvious as to charge them with knowledge and appreciation of the danger and here rely upon the case of Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368, motion for rehearing overruled on October 9, 1963, opinion by Justice Greenhill.

In Rick Furniture Company v. Smith, Tex.Civ.App., 202 S.W. 99, the court of civil appeals affirmed a recovery for plaintiff despite the defendant's contention that in hanging a porch swing which it had sold to the plaintiff it was performing a pure gratuitous service and no liability arose therefrom since the jury had found that defendant had failed to use ordinary care to ascertain whether or not the swing had been safely hung, such negligence being the cause of plaintiff's injury and that plaintiff was not guilty of contributory negligence.[1]

In Fox v. Dallas Hotel Company, 111 Tex. 461, 240 S.W. 517, it appeared that Fox was crushed to death by an allegedly defective elevator maintained by Dallas Hotel Company under an agreement with a third party. The hotel company de-

1. In Rick, 202 S.W. at page 100 of the opinion, the court said: "[h]aving undertaken to hang the swing, appellant thereby bound itself to exercise ordinary care to make it reasonably safe for the use to which appellee intended to put it. This view is supported by authorities cited by appellee. The rule is thus stated in 9 Cyc. 310: 'The promise of a gratuitous service, although not enforceable as a promise, involves liability to use ordinary care and skill in performance.' In Bailey v. Walker, 29 Mo. 407, the court, after announcing the well-established rule that a promise, to support an action, must be founded on a sufficient consideration, said: 'If a man without any consideration promises to do a thing, and fails to do it, he cannot be sued for such failure; but if he does undertake it, and by negligence does it in a manner to cause loss to him for whom he is acting, he will be bound to make good that loss.' Likewise the Supreme Court of New York in Thorne v. Deas, 4 Johns. (N.Y.) 84, held that an action will not lie for nonfeasance of a gratuitous act, but stated the principle we think applicable here thus: 'If the party who makes this engagement, enters upon the execution of' it 'and does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this misfeasance.' "

fended on the theory that it owed no duty to the deceased. The Supreme Court overruled such contention on the basis of common-law, non-contract obligations imposed on a person to use care not to injure others by property controlled or forces set in operation by him.[2]

In Ivey v. Phillips, 36 F.Supp. 811 (S.D. Tex.1941), a landowner sued for damages to the surface of his land and for injuries to the oil and gas bearing sands under his land by reason of defendant's efforts to extinguish an oil well blowout on an adjoining tract. The court charged the jury as to the duty of a volunteer to exercise care in connection with the project undertaken[3] based upon Texas substantive law.[4] The jury returned a general verdict in favor of the defendant under such instructions but the case strongly supports the contentions of appellants here as to presentation of a fact issue as to existence of duty.

In Buchanan v. Rose, 138 Tex. 390, 159 S.W.2d 109 (1942), the defendant's truck while being operated over a bridge on a public road crushed the bridge, causing it to press down at one end below the embankment and to become dangerous to traffic. Shortly thereafter, a witness informed the driver of the truck that it had broken the bridge and asked if he was not going to put up warnings to prevent others from being injured. The driver did nothing. Several days later one of the plaintiffs was severely injured when the car in which she was riding with her husband ran on to the broken bridge. It was conceded there was no negligence which caused the bridge to break down and the only negligence relied on was the failure to put up warnings to protect other travelers from being injured as a result of the broken bridge. The judgment of the trial court, based upon a jury verdict that the defendant was negligent, was reversed and rendered by the Court of Civil Appeals, which action was approved by the Supreme Court. In holding that defendant did not owe a legal duty to plaintiffs, the Supreme Court contrasted the lack of duty of a mere

2. In Fox, the court cited with approval from other decisions as follows: "There is still another class of cases which hold what seems to us to be the correct doctrine, viz. that the obligation, whether for misfeasance or nonfeasance, does not rest in contract at all, but is a common-law obligation devolving upon every responsible person to so use that which he controls as not to injure another, whether he is in the operation of his own property as principal or in the operation of the property of another as agent."

 \* \* \* \* \* \* \*

 "In every situation where a man undertakes to act or to pursue a particular course, he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation or by any agent for which he is responsible. If he fails to exercise the degree of caution which the law requires in a particular situation, he is held liable for any damage that results to another just as if he had bound himself by an obligatory promise to exercise the required degree of care."

3. In Ivey, 36 F.Supp. at page 817 of the opinion, the court said: "The Court charged the jury that defendant was under no obligation to kill the well; but having attempted to do so, defendant owed plaintiff the duty to exercise ordinary care in its attempt to kill the well so as not to injure plaintiff;[9] that if defendant failed to exercise ordinary care and such failure was the proximate cause of plaintiff's damage, then the jury was authorized to find for plaintiff according to the measure of damages stated."

4. Footnote 9 from Ivey, hereinabove indicated, reads as follows: "Defendant contended that it was not liable to plaintiff, even for negligence, because it owed no duty to plaintiff. (citing cases) Having undertaken to kill the well, however, defendant was in duty bound to exercise ordinary care so as not to injure plaintiff or his property. Rick Furniture Co. v. Smith, Tex.Civ.App., 202 S.W. 99; Missouri, K. & T. Ry. Co. v. Wood, 95 Tex. 223, 66 S.W. 449, 56 L.R.A. 592, 93 Am. St.Rep. 834; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517."

bystander with existence of duty on the part of a person who with or without negligence creates a dangerous situation in or along a public way.[5] The holding of "no duty" in Buchanan is squarely based upon the fact that the defendant's truck driver was in the category of a mere bystander. This situation is clearly distinguishable from the instant case wherein the appellees affirmatively acted to make the repairs to the roadway.

If the decision as to existence of duty owing by appellees to appellants could be limited to the contentions made by appellants we could readily determine that, since it is conclusively shown that appellees were volunteers who undertook a task which they originally had no duty to perform, they would owe a duty to exercise ordinary care toward persons whom they could reasonably foresee might use the roadway involved. However, the "no duty" doctrine in many Texas cases assumes the legal relationship, obligations and defenses of an occupier of land or premises on the one hand, to his invitees, on the other. We do not attempt to decide the relationship of the parties hereto in view of a new trial, as such question will be for the determination of the trial court at the appropriate time. Our present consideration of this matter cannot be restricted where we are faced with appellees' contentions which infer a relationship which may or may not exist. Here the contention is made that appellees had "no duty" because appellants either had knowledge of the dangers at the place in question and that they appreciated the same, or that they were charged with knowledge and appreciation of the dangers because the same were open and obvious.

We have heretofore summarized the contentions of appellees under the theory of "no duty", and we will now consider each of them separately, that is, Tenneco's counterpoints One, Two, Three and Four and Richardson's counterpoint I.

Tenneco, under its Counterpoint Number One, contends that there was no duty owing by it to restore the washed-out area in the road caused by Hurricane Carla to

5. In Buchanan the court said:
 "There are many instances in which it may be said, as a matter of law, that there is a duty to do something, and in others it may be said, as a matter of law, that there is no such duty. Using familiar illustrations, it may be said generally, on the one hand, that if a party negligently creates a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby. On the other hand, it may be said generally, as a matter of law, that a mere bystander who did not create the dangerous situation is not required to become the good Samaritan and prevent injury to others. Under the last rule, a bystander may watch a blind man or a child walk over a precipice, and yet he is not required to give warning. He may stand on the bank of a stream and see a man drowning, and although he holds in his hand a rope that could be used to rescue the man, yet he is not required to give assistance. He may owe a moral duty to warn the blind man or to assist the drowning man, but being a mere bystander, and in nowise responsible for the dangerous situation, he owes no legal duty to render assistance.
 "We think it may also be said that if one by his own acts, although without negligence on his part, creates a dangerous situation in or along a public way and it reasonably appears that another in the lawful use of such way in the exercise of ordinary care for his own safety may be injured by the dangerous situation so created, the one creating the same must give warning of the danger or be responsible for the consequences. To illustrate: One who in the exercise of a lawful right, and without negligence on his part, makes an excavation across a street or sidewalk or on his premises in close proximity to a public way, or parks a vehicle in a road, or otherwise obstructs the road with a foreign substance, is bound to give warning of the danger created thereby. Kampmann v. Rothwell, 101 Tex. 535, 109 S.W. 1089, 17 L.R.A.,N.S., 758; Roper v. Greenspon, 272 Mo. 288, 198 S.W. 1107, L.R.A. 1918D, 126; Buesching v. St. Louis Gas Light Co., 73 Mo. 219, 39 Am.Rep. 503."

a condition suitable for normal vehicular travel. Appellants make it clear in their reply brief that they have never so contended; that they simply contend that when Tenneco elected to make the repairs to the county road, it was obligated to exercise ordinary care in the task undertaken and actually performed; and that there was a failure to do so. Tenneco's Counterpoint Number One does not furnish a ground upon which the summary judgment may be sustained.

Tenneco contends under its Counterpoint Number Two that the summary judgment was proper because there was no duty owing by appellees to place any warning signs or devices at the wash-out on a public county road. The thrust of the argument here is that appellees were prohibited from putting up such warning signs because of the provisions of Article 6701d, Sec. 36(a), Vernon's Annotated Texas Civil Statutes. Such position is not well taken, because, as appellants point out, if the Mustang Island Road was closed (which appellants do not concede) then the provision contained in said Statute does not apply; and if the road was open to vehicular traffic then appellees were required to make the repairs to it in the light of the provisions of said Statute prohibiting signs. In the final analysis, any duty of appellees to give warning as to the condition of the washed-out area after the repairs were made may be one phase of the obligation to exercise care toward persons who might reasonably be expected to use said roadway. Since fact issues were presented as to the existence of duty to use care, Tenneco's Counterpoint Number Two would not furnish a proper basis for the summary judgment.

Under Counterpoint Number Three Tenneco contends that there was no breach of duty because their agents knew the county road had been closed to public travel, the temporary repairs having been made only for use by vehicles operated by it or its business invitees or associates and not for public use. Whether the Mustang Island Road was closed on the date of the accident and the effect of it having been closed at one time are factors involved in the issue of foreseeability as to use of the said roadway by other persons. Appellant John L. Bolin said in his deposition and an affidavit that at the intersection where he turned left to get on to the Mustang Island Road there was a three-legged sawhorse about seven or eight feet long with no printing, flags or instructions on it. Bolin said this indicated to him that one could not travel from Port Aransas all the way down to Padre Island; that other cars were travelling on the said road south of the said sawhorse on the day of the accident. Bolin observed such cars both on the trip southward and on the return trip going northward just before the accident took place. The affidavit of the County Commissioner in charge of the roads in the area in question sets out that within a few days after Hurricane Carla a barricade was placed across Mustang Island Road just south of the City of Port Aransas; that such barricade consisted of posts sunk into the ground through the paved portion of the road and extending almost across the entire width of the pavement; that there were cross pieces of 2″ x 12″ approximately twenty feet long; that there were red reflectors and red flags on it; that it was possible for vehicles to go around the barricade by travelling off the paved portion of the road by all or substantially all of the vehicles being on the shoulder of the road; that the barricade was damaged on some unstated date in September, 1961; that it was not feasible to prevent all vehicles from travelling south of the barricade on said road.

Appellees place great emphasis upon their contention that the Mustang Island Road was closed at the time the repairs were made, and that the temporary roadway was for use only by the vehicles of Tenneco, and those of its business invitees and associates. There is nothing in the record of this case which establishes that appellees had any better right to use the

road in question than did the appellants. Although the motive of appellees in making the repairs to the roadway was admittedly proper, nevertheless, they could not simply assume on the basis of conditions existing at the time the repairs were made that the roadway would not be used by other persons at a later time. They were not shown to be in position to choose the persons who would use the roadway, and they could not sit back and ignore the use and possible use of it by others. The depositions of appellants show that a number of other cars were using the Mustang Island Roadway and the place where the repairs had been made at least for several hours prior to the accident. The Mustang Island area here involved is widely known as a place where fishing, beachcombing and other recreational activities are engaged in and which is visited by many persons for such purposes. The record herein further shows that considerable publicity was given for several days prior to the accident in question and on the day of the accident that the area was being opened to visitors; that the storm had covered the beach areas with sea shells of every description and one newspaper article set out that: "plain beachcombers are having a field day, too".

We believe, and so hold, that the record herein shows that reasonable minds should differ as to whether appellees could reasonably have foreseen that the Mustang Island Roadway would be used by other persons on the date of the accident and that a material fact issue was presented to be resolved by the jury. Tenneco's Counterpoint Number Three does not furnish a basis for upholding the summary judgment herein.

Tenneco, under its Counterpoint Number Four, contends that, under the conditions, it was only under a duty not to make more dangerous the condition of the wash-out caused by Hurricane Carla. Both appellees argue strenuously that the temporary repairs made by them improved the situation and did not make it worse, more dangerous or more hazardous. Appellants dispute such contentions and say that the new and different situation created by appellees was dangerous and that a duty of exercising care was imposed on them. Appellants point to the fact that before the temporary repairs were made the perpendicular drop-offs at either end of the washed-out area provided a warning of the dangerous condition then present; that a person approaching such location from the north could see that the washed-out area was not passable and would, therefore, never have crossed to the south side of it; that after the repairs the drop-offs were slanted somewhat and cars could be observed using the one lane of the temporary roadway created by the repairs; that the new and altered situation was actually more dangerous than the former one which, in itself, furnished a warning which was not given by the altered one.

In connection with Tenneco's "no duty" contention, and particularly with reference to its position that it was only under a duty not to make more dangerous the condition of the wash-out caused by Hurricane Carla, reliance is placed upon the cases of Freeman v. B. F. Goodrich Rubber Co., 127 S.W.2d 476 (Tex.Civ.App. writ dism. agr.); Buchanan v. Rose, 138 Tex. 390, 159 S.W.2d 109; Ainey v. Rialto Amusement Co., 135 Wash. 56, 236 P. 801, 41 A.L.R. 263; Davis v. United States, 208 F.2d 863 (2d Cir., 1953); and Hecht Co. v. Hohensee, 65 App.D.C. 328, 83 F.2d 585 (1936). Freeman is cited only for a statement of the general rule as to duty and its relation to negligence. Buchanan is actually more favorable to appellants than it is to appellees, as we have heretofore pointed out, because there was no affirmative action taken by defendant there with reference to the dangerous condition on the highway, whereas, in this case, the evidence is undisputed that appellees voluntarily took affirmative action to alter a dangerous condition which a jury could find was dangerous on account of appellees' conduct. We can find nothing in the out of state cases of Ainey, Davis and

Hecht, which would alter the rules laid down in the Texas cases heretofore cited and relied on by appellants.

We hold that whether the condition of the highway was dangerous at the time of the accident herein on account of the temporary repairs made by appellees or was dangerous in a different way from what it was after Hurricane Carla, involve questions upon which reasonable minds can differ and that the summary judgment herein cannot properly be based upon Tenneco's Counterpoint Number Four.

The "no duty" contention of Richardson is urged under its Counterpoint I. Under Counterpoint I Richardson contends that no duty owing by appellees to appellants was breached because at the time of the accident (a) the situation and any dangers were, or should have been known to them; and (b) it was not reasonably to be expected that persons ignorant of the dangers would be exposed to them.

Under its Counterpoint I Richardson argues that the appellants had knowledge of the dangerous situation at the washed-out area and of the absence of barricades and warning signs and that there is no legal duty to warn a person of, or protect him against, a dangerous situation of which he knows or of which he should have known, placing reliance upon Robert E. McKee, General Contractor, Inc. v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954). We are particularly concerned about the "should have known" part of this contention because of a recent decision of our Supreme Court in which certain language in McKee was specifically disapproved.

■ After the judgment of the trial court was rendered in this case and even after the briefs were filed herein, the Supreme Court of Texas handed down its opinion in the case of Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368, motion for rehearing overruled on October 9, 1963. The opinion contains an exhaus-

tive review of the Texas "no duty" decisions as well as the Texas *volenti non fit injuria* cases and the court specifically disapproves certain statements in McKee to the effect that in the application of such concepts whether the plaintiff *should have known and appreciated* is sometimes a jury question. Under Halepeska it is now clear that under both the "no duty" and *volenti* concepts there must be (1) knowledge, or facts which charge a person with knowledge, and (2) appreciation of the danger, in order to affect recovery.

There are several reported cases where reliance has been placed upon McKee and the "should have known" language heretofore referred to. Since we cannot determine the basis of the summary judgment rendered by the trial court herein, a strong ground for reversal is presented for the reason alone that the lower court could have held that appellees owed no duty to appellants because they "should have known" and "should have appreciated" the dangers at the washed-out area where the repairs were made, placing reliance upon McKee, just as the Court of Civil Appeals did in Halepeska.

Subdivision (b) of Richardson's Counterpoint I relates to foreseeability of use of the roadway by members of the public. Since we have already held, under Tenneco's Counterpoint Three, that a fact issue was presented in such connection, we also overrule Richardson's said contention presented under subdivision (b) of its Counterpoint I.

Under Counterpoint III Richardson contends that it is not liable to appellants because it did not (a) volunteer to make the repairs; or (b) exercise discretion as to what should be done; or (c) fail to do properly what it was employed to do. The record establishes that Richardson made the temporary repairs to the washed-out area under a contract with Tenneco. Whether Richardson exercised discretion as to what should be done, or failed to do properly what it was employed to do, in-

volve issues which are not conclusively established and must be resolved by a jury. Said counterpoint is overruled.

From the foregoing discussion it is apparent that there was sufficient evidence to raise the following genuine issues of material fact: That appellees created a situation on the roadway which was dangerous because of the temporary repairs made by them, regardless of the fact that the originally dangerous situation was caused by Hurricane Carla; that appellees could reasonably have foreseen that the Mustang Island Roadway would be used by other persons such as appellants; that appellants did not have actual knowledge and appreciation of the dangers involved and did not have full knowledge and appreciation of dangers which were open and obvious. We, therefore, hold that the present record fails to conclusively establish that appellees owed "no duty" to appellants, and the presence of fact issues concerning duty prevented summary judgment on that phase of the case. The "no duty" contentions of appellees are overruled.

We will next consider the questions relating to the alleged breach of duty. On this phase of the case, the summary judgment in favor of appellees would be proper only if it was conclusively established that there was no breach of any duty owed by appellees to appellants. If a jury could find, on the basis of the evidence in the record before us, that appellees failed to use ordinary care in connection with the repairs made to the roadway in the respects alleged by appellants, i. e., failure to properly slope the ramps, or to fill in the washed-out area, or to properly pack down the surface of the ramps, or to fill in the area to the entire width of the highway, or to erect some type of device to warn motorists of the conditions existing at the site of the washed-out area, then breach of duty could be established. When we look to the record as a whole it clearly appears that jury issues were raised in connection with the said allegations of breach of duty. One pertinent portion of the evidence is to the effect that appellee Loyd Richardson Construction Company ordinarily did not perform road work or repairs and the person in actual charge of the repairs at the washed-out area, as well as the workers themselves, were not experienced in such line of work.[6] A breach

6. Olen W. Richardson testified by deposition substantially as follows: He is superintendent of the construction department of Loyd Richardson Construction Company, but is not connected with tow boats, barges or dredging work of said company. He has been in construction work for about thirty years. After Hurricane Carla he was requested by some oil companies to do some work on Mustang Island. Tenneco needed some equipment to place shell on their plant site and for some other repairs on short roads. He sent a barge with a crane on it and a bulldozer and some trucks. He, personally, did not go to the area of the wash-out until about three weeks after the accident. His company sent five or six men to do the work under Mr. Boatright's direction and control. They first engaged in work at other places and were then requested to do the work at the washed-out area of the Mustang Island Road. He told Boatright they needed some shell over there, and he later learned that seventy five yards of shell was furnished. A company record showed that the work was done on September 16, 1961. His company did other work in the area for probably thirty to forty days. He did not know about warning signs at the time the shell was placed in said location. Although he had heard of other washed-out areas on the Mustang Island Road, the one involved in this case is the only one he had actually seen. He said it was dangerous. Loyd Richardson Construction Corporation customarily does not do construction work or repair work on public highways or streets, and the instant case was the only time he knew of where repairs had been made by his company to a county road. He did not contact anyone with the county or other official concerning such repairs. He did not know whether anyone with Tenneco contacted any county official about such repairs. His company did not have warning signs of any type in connection with the work in that area. Richardson had five or six people working in that area for thirty to forty

**362**

of duty by appellees in one or more of the instances mentioned could be found by a jury to be a proximate cause of the accident in question and such issues of causation on account of the conduct of appellees were not conclusively established against appellants. The summary judgment herein cannot properly be based upon either the lack of material fact issues as to breach of duty by appellees or of causation because of their conduct.

On the questions of contributory negligence and causation in connection therewith we are concerned with appellants' points Six and Seven, Tenneco's Counterpoints Five and Six, and Richardson's Counterpoint IV. Appellants contend that the record fails to establish that either John L. Bolin or any of the three other appellants were guilty of negligence as a

matter of law. Tenneco contends that it was conclusively shown that the sole proximate cause of the accident was the negligence of John L. Bolin or, in any event, that such negligence was a proximate cause, which would bar recovery for John L. Bolin and his wife. Richardson joins in the last-stated contention.

Consideration of the entire record convinces us that the issues of contributory negligence and causation were not conclusively established against appellants. Appellants rely upon the cases of Shuford v. City of Dallas, 144 Tex. 342, 190 S.W.2d 721 (1945) and Adams v. Corbin, 301 S.W. 2d 209 (Tex.Civ.App., 1957, err. dism.). We hold that under such decisions we are precluded from finding that such issues were established conclusively so as to authorize a summary judgment against appellants.

days after Hurricane Carla. He did not make inquiry to determine if Tenneco or any of the other oil companies had asked for permission to make repairs from the county. The trucks used in making the repairs to the washed-out area were rented with drivers. There are a number of types of rollers used to pack down shell or dirt and Richardson did not have any of them.

Thomas C. Boatright testified by deposition substantially as follows: He had been employed by Richardson over a period of twelve years. In September, 1961, his title was Marine Foreman, pile driver foreman. Whenever there was no pile driving work he did whatever else there was to be done. After Hurricane Carla he received orders from his company to do some work on Mustang Island for some oil companies. Representatives of such oil companies went with him to the washed-out area and told him what they wanted done. He was told to patch the wash-out in the county road just enough so that trucks could get back and forth across it. He just filled the washed-out area in to where they could pass it in the lower part of it. He pushed the shell in with a 'dozer and put shell all the way across the washed-out area. The shell was hauled in by trucks. The shell was only packed down by the bulldozer and trucks backing over it. The hole was partially filled up and he put in a slope from the bottom of the washed-

out area up to the paved portion of the road. The ramp was the width of the dozer blade, about 8–10 feet at the top and was wider at the bottom. The ramps sloped for about 35–40 feet on each side of the gap. He worked at the washed-out area one day, or perhaps two, and did not return for several weeks. During the repair work at the washed-out area two men from oil companies told him what they wanted him to do. He did not know the names of these men. They did not tell him what kind of vehicles would be using the roadway which was repaired. No other employees of Richardson gave him instructions as to what to do. He did the work the way it seemed to him it should have been done and left it at that, according to the instructions of Tenneco. He used only mud shell. He knocked down the toe of each slope to get smooth access to each slope, that is, he knocked off a foot or so of the pavement. There was no conversation about putting up a barricade or a flare or sign at either end of the washed-out area. The west lane of the road was not repaired. Before the wash-out was repaired vehicles could not go across it. After the repairs two wheel vehicles could cross the washed-out area at slow speed. He gave his opinion that the temporary fill improved the bottom of the wash-out for vehicular traffic; it was impassable before the work was done.

Richardson contends under its Counterpoint II that appellants are barred from recovery under *volenti non fit injuria.*[7]

■ We have heretofore called attention to the case of Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368, rehearing denied on October 9, 1963, opinion by Justice Greenhill. In connection with the doctrine of *volenti non fit injuria,* the court said in part:

"The *volenti* doctrine is an affirmative defense. 'Volenti' is a contraction of the Latin phrase, *volenti non fit injuria,* which means legally that a plaintiff may not recover for an injury to which he assents; that a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger. In this state, the decision to incur the risk must have been deliberate; i. e., made with knowledge and appreciation of the danger so that it may be said that the person acted as a result of an intelligent choice. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W. 2d 172 (1951). Logically, a plaintiff cannot make an intelligent choice to confront a risk if he does not actually know of the danger, or know such facts as would in law charge him with knowledge of the danger and appreciation thereof. Thus, while the cases speak of the requirement of actual knowledge and appreciation, the plaintiff may not close his eyes to obvious dangers; and he may not recover where it is shown that he is in possession of facts from which he would be legally charged with appreciation of the danger. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952)."

\* \* \* \* \* \*

"On the basis of Wood v. Kane Boiler Works, and cases following it, therefore, for *volenti* to be applicable, there must be actual knowledge and appreciation; or the danger must be so open and obvious that the plaintiff is charged in law with knowledge and appreciation thereof. So the plaintiff must know (an issue of fact, usually) or be charged in law with knowledge and appreciation. That being so, the 'should have known' of the danger, and 'should have appreciated the extent of the danger, if any, in opening the valves,' as issues of fact, in this Halepeska case were properly disregarded by the trial court, in so far as the defense of *volenti* is concerned."

■ We have heretofore discussed Halepeska in connection with the "no duty" contentions of appellees and have pointed out that the summary judgment of the trial court herein could have rested on

---

7. In 92 C.J.S., pp. 1027–1028, the following appears:
VOLENTI NON FIT INJURIA. A maxim meaning " '[t]hat to which a person assents is not esteemed in law an injury.' or 'He who consents cannot receive an injury.' The maxim is a familiar principle of the common law, and means that if one, knowing and comprehending the danger, voluntarily exposes himself to it, even though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. It is predicated on the theory of knowledge and appreciation of the danger and voluntary assent thereto."
Similar expressions from reported cases are as follows: (1) To the consenting no injury is done; (2) a person who consents to a thing cannot complain of it as an injury; (3) no legal wrong is done to him who consents; (4) one who consents to the doing of an act cannot maintain an action in respect of the damage which results; (5) that which, unauthorized, would amount to wrongful injury, subjecting the doer of it to an action for damages by the person injured, loses such character if the person suffering the disadvantage or injury consents to the act; (6) one will not be heard to complain of results one has invited; (7) one who voluntarily exposes himself or his property to a known and appreciated danger, may not recover for injuries sustained thereby; and (8) no one can enforce a right arising out of a transaction which he has voluntarily assented to.

the basis of the "should have known" and "should have appreciated" language in Mc-Kee and other cases decided before the opinion of the Supreme Court in Hale-peska. A similar reason for reversal is here presented under the *volenti* doctrine. Under Halepeska it appears that if a court cannot say as a matter of law that a plaintiff has voluntarily exposed himself to a danger with actual knowledge, or its equivalent, and appreciation of it, then such issues are for determination by the jury. We cannot say, under summary judgment rules, in this case that appellants were conclusively shown to have voluntarily exposed themselves to danger with knowledge and appreciation of it any more than the Supreme Court could say that Halepeska was so charged with knowledge and appreciation in the cited case.

Halepeska further points out that the "no duty" and *volenti* doctrines are relatively harsh doctrines which go beyond ascertaining whether the plaintiff failed to exercise ordinary care under the circumstances and hence was contributorily negligent; that they bar recovery, generally, without inquiry as to justification or proximate cause. The court, therefore, felt required "to recognize justifiable limits" on the doctrines of "no duty" and *volenti*.

Richardson's Counterpoint II does not furnish a sufficient basis for the summary judgment herein and it is overruled.

It further appears that some of the contentions made herein involve the relationship between Tenneco and Richardson. Appellee Tenneco contends, by its Counterpoint Number Seven, that if there was any breach of duty toward appellants it was on the part of Richardson who was an independent contractor as to Tenneco and who did the work according to its own method and plan. We have heretofore mentioned the contention made by appellee Richardson under its Counterpoint Number III that it is not liable to appellants because it did not (a) volunteer to make the repairs; or (b) exercise discretion as to what should be done; or (c) fail to do properly what it was employed to do.

In the trial court Richardson denied that appellants were entitled to recover, but plead alternatively that in the event of such recovery that it have indemnity or contribution against Tenneco. Tenneco did not ask for similar relief against Richardson. The summary judgment of the trial court did not adjudicate any issues as between Tenneco and Richardson and there was no necessity for such action since the trial court held that neither appellee was liable to appellants. The issues between appellees as to indemnity or contribution could only arise in the event of recovery by appellants and there is no necessity for us to give consideration to this phase of the case. The record shows that Tenneco caused the temporary repairs to be made by Richardson. Since reasonable minds could differ as to whether there was negligence in connection with the making of same, the above-mentioned counterpoints furnish no proper basis for the summary judgment.

 Summary judgment is possible in this state only by virtue of Rule 166–A, Texas Rules of Civil Procedure, and the provisions of this rule must be strictly complied with. The underlying purpose of said rule is the elimination of patently unmeritorious claims and it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. The burden of demonstrating the lack of a genuine issue of fact is upon the movant and all doubts are resolved against him. Gardner v. Martin, 162 Tex. 156, 345 S.W.2d 274 (1961); Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S. W.2d 233 (1957); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). The court necessarily acts upon a "cold record" in passing upon a motion for summary judgment. Experience proves that the factors of credibility of witnesses and weight to be given testimony may be involved in some types of cases more than in others and observation of witnesses by

the jury may effectively influence the determination of fact issues. This is not to say that the summary judgment procedure should be disregarded where the requisite tests are met; but it is clear to us that the instant case is one in which the parties should not be deprived of a full scale trial, whatever the results may be.

The summary judgment cannot be sustained in this case. The judgment of the trial court is reversed and the cause is remanded for a new trial.